UNITED STATES of America

v.

Isiah KITCHEN.

No. 89 CR 908–23.

United States District Court,
N.D. Illinois, E.D.

Feb. 22, 1993.

William Hogan and Theodore Poulos, Chicago, IL, for plaintiff.

Jack P. Rimland, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge, Sitting by Designation.

'The undersigned Judge was responsible for the trial of this defendant in Chicago, Illinois during seven trial days between December 1 and 10, 1992. That trial resulted in a jury verdict on Counts 56 and 62 of guilty. The defendant has filed post-trial motions and the United States Attorney has responded to the same. Such are now ripe for ruling.

This defendant was ably represented by an experienced and highly professional criminal defense lawyer who was appointed to defend him. That lawyer's performance in the eyes of this court fully complies with the mandates for effective counsel under the Sixth Amendment of the Constitution of the United States, as explicated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This court has had the advantage of a full transcript of the proceedings of this trial and is able to examine the contentions and arguments that are made against the backdrop of the record in this case.

By explicit agreement, this defendant and the United States Attorney agreed with the court to a procedure whereby 16 jurors would be seated with the government having

eight peremptory challenges and the defendant having 12 peremptory challenges. Under that procedure, 16 jurors were initially seated, including three who were of the same race as this defendant. In no remote way did the United States Attorney violate any of the values in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). During the course of the trial for various reasons readily apparent in the record, it was necessary to excuse a total of four jurors, the last of whom was excused by explicit agreement and the other three were excused without objection by the defendant.

█ It needs to be said that both the defendant and the United States of American failed to use all of the peremptory challenges that were available to them. It also needs to be said that most of the issues that are now raised on behalf of this defendant are not ones that were specifically preserved by specific objections during the course of this trial. It is also readily apparent that this defense lawyer knows exactly how to make specific objections and preserve arguable reversible error when he wants to. He did not do so with reference to the selection of the jury. He did not do so with regard to any contentions regarding publicity.

In paragraph 12 of his post-trial motion filed January 11, 1993, the defendant now complains with reference to the procedures adopted in excusing Juror Klepper and Juror Edenton. This court excused both of them in the interest of great caution, particularly Edenton, who wanted to stay. No objection to this excusal or any mistrial motion was made by the defendant. He did, however, want all of the jurors to be questioned on what they may have heard Mr. Klepper say about his wife's concerns for his safety. This court determined that it could not fairly make additional inquiry of the entire jury without doing more harm than good to this defendant. Honoring the defendant's request would have spread the fear of Mr. Klepper's wife to the entire jury unnecessarily. The whole well would have been poisoned. This court remains convinced that its decision on this matter worked to the advantage of the defendant.

This court is all too familiar with *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), and was personally acquainted over many years with both the lawyer and the judicial participants in that judicial drama. This court is also well aware of the values involved in *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), and *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). None of the circumstances in this case with reference to publicity in any way come even close to being in tension with the constitutional values that are involved in the *Irvin–Estes–Sheppard* line of decisions. In addition to not making any specific record and objection with regard to the newspaper publicity referred to, it also needs to be emphasized that unlike those three cases, none of the publicity here was in any way directly and explicitly related to *this* defendant. In fact, as far as this court knows from the record, there was no mention whatsoever of this defendant's name in any of the publicity. What was mentioned often and in a highly negative fashion was the name of the assistant United States attorney who was prosecuting this case. It is not an overstatement on the basis of what is on the record in this case to say that Mr. Hogan was being severely trashed in the Chicago media, both in print and on television. However, none of the stories that this court is aware of in the record mentioned in any way *this* defendant or *this* trial. It takes more than that to make a constitutionally unfair trial based upon publicity. It is not beyond reality, given the nature of the publicity, that indeed the publicity may well have enured to the benefit of this defendant by creating image, credibility and integrity problems for this federal prosecutor. In any event, the court is absolutely convinced that with regard to the jury selection and publicity issues, nothing relevant was preserved and even if it had been, there is no basis to undermine the decision and verdict in this case.

In the course of handling pretrial matters and ruling on various matters throughout the trial, a United States district judge is required to make innumerable rulings and such was the case here. Certainly, many if not most of the critically important rulings along

the way were favorable to this defendant and potentially adverse to the government. The defendant's allegation of error regarding a motion to quash and to suppress evidence found in the Campbell Street house is of special concern. A check of the docket back to April of 1992, approximately the time that this Judge took responsibility for this case, shows no filing of such a motion to quash. The government also asserts that there was no such filing. No such motion was renewed or argued during the course of the defendant's trial. The court will therefore not address the subject now.

This defendant, represented by highly competent counsel, made a decision to take the stand and testify. If memory serves, this court admonished counsel of the decision by Judge, now Justice, Stevens in *Harding v. United States*, 525 F.2d 84 (7th Cir.1975). This court is well aware of the values of *Harding* since it was its obligation to retry the case on remand. This court drew a tight line on the federal prosecutor's ability to impeach this defendant by prior criminal offenses. The record will support such a conclusion.

■ This jury along with this Judge had an opportunity to see and hear this defendant's testimony and to weigh his credibility and believability. To the extent that this verdict is based upon a rejection of the basic believability and credibility of this defendant, this court would have arrived at precisely the same conclusion had it been sitting without a jury. The determination of credibility is at the very heart of the jury's function under the Sixth Amendment of the Constitution of the United States. When this defendant's testimony is weighed and considered along with all of the other testimony in the case, there is a firm factual foundation for both verdicts in this case. The key element that was argued as to both charges was the element of possession: in one case, the possession of a firearm and in the other case, a possession of a controlled substance. The evidence as to those elements of possession as to those two charges is clearly sufficient given the inference in favor of those verdicts which prevail at the end of all of the case. Under *Jackson v. Virginia*, 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979), and its more recent progeny, *Andersen v. Thieret*, 903 F.2d 526, 531 (7th Cir.1990); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth*, 832 F.2d 445 (7th Cir.1987), *cert. denied*, 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary*, 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217 (7th Cir.1987), *cert. denied*, 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane*, 818 F.2d 615 (7th Cir.), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections*, 817 F.2d 448 (7th Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987), a rational trier of fact, in this case a 12–person jury, could well have determined beyond a reasonable doubt that this defendant was guilty of both of the offenses with which he was charged and upon which he went to trial.

There can be no doubt that so-called "reverse buy" controlled substance cases are honored in this circuit. *United States v. Sanders*, 979 F.2d 87 (7th Cir.1992); *United States v. Aguilar*, 948 F.2d 392 (7th Cir. 1991), *United States v. Ramos*, 932 F.2d 611 (7th Cir.1991), and *United States v. Cea*, 963 F.2d 1027 (7th Cir.1992). The factual setting of each of these cases has close parallels in this record. Also, *Ramos, Cea,* and *Sanders* raise sentencing issues that may arise here. To be sure, there are conspiracy issues there that are not present here as a result of rulings made by this court adverse to the prosecution.

This court does not conceive that the Assistant United States Attorney intentionally placed perjured testimony before the jury in this case as prohibited in *United States v. Kaufmann*, 783 F.2d 708 (7th Cir.1986), nor in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See also Ross v. Heyne*, 638 F.2d 979 (7th Cir.1980).

■ The defendant in paragraph 14 of his post-trial motions challenges the lack of an expert chemist testifying as to Government Exhibit Cocaine 3. This court has carefully reviewed the testimony on both direct and

cross-examination of Robert Krefft, a chemist with the Drug Enforcement Agency. It is true that Mr. Krefft concentrated on the other drug exhibits, Government's Cocaine 1 and 2, and did not address the items alleged to be drug packages found in the Campbell Street house. The government, however, did not emphasize Exhibit 3, either, and this court allowed its admission "for what it is worth." The record appears to show that the defendant's only objection to its admission was part of a continuing objection to everything found in the Campbell Street house. See page 419 of the trial transcript:

MR. RIMLAND: Objection, your Honor.

THE COURT: State briefly the basis.

MR. RIMLAND: Same basis, your Honor.

THE COURT: All right. Objection overruled.

MR. HOGAN: All right.

THE COURT: What is the exhibit number?

MR. HOGAN: 10/5/89 Cocaine 3.

"Same basis" appears to refer to Mr. Rimland's objection on page 369 of the trial transcript:

MR. HOGAN: Your Honor, I would offer Government Exhibit Gun 1 into evidence at this time.

MR. RIMLAND: Your Honor, I would obviously have an objection.

THE COURT: For what?

MR. RIMLAND: Well, for the purposes of—again there is not a sufficient—sufficient nexus and/or a foundation to my client.

The defendant did not complain until later that a police officer rather than a chemist declared the package to contain cocaine. On that basis and because the court does not believe that the defendant was prejudiced by the admission of Cocaine 3, the court is comfortable with its ruling.

Testimony about the history and activities of the Blackstone Rangers was introduced by Lawrence Griffin. The defendant made a continuing objection to this subject at the time and repeats his objection now. This information was more probative than prejudicial, in part explaining to the jury the connection between Lawrence Griffin and the defendant. To the extent that the defendant complains of his being portrayed as a villain, the witness painted himself with the same brush. This testimony, therefore, was also properly before the jury for the purpose of weighing Mr. Griffin's credibility.

This brings the court to the event which occurred on the final day of this trial after the evidence had all been closed and after an extensive proceeding under Rule 30 of the Federal Rules of Criminal Procedure. Consistent with this court's long-standing practice, an extended conference on instructions was held on the record in open court with the defendant present and a full opportunity was given both to the prosecution and defense to deal fully and carefully with the instructions that were to be presented to the jury. In that regard, it is noteworthy that while this court gave instructions about a lesser included offense over objections, this jury did not find this defendant guilty of any lesser included offense and to that extent has mooted out that issue from the record in this case.

The court now turns finally to the event that took place outside of the presence of the jury on the morning of the last day of trial. Another Assistant United States Attorney came into this courtroom making certain representations as to additional material that had been given out on the government's key witness, Lawrence Griffin. This court has carefully reviewed the extensive examination of Lawrence Griffin before the court without the presence of the jury in the trial of this case. The court has also made an examination of the total testimony elicited both by the prosecution and defense of Lawrence Griffin before the jury and has made a careful, hopefully minute examination of the testimony that was heard on the last day of the trial outside of the presence of the jury. This court heard that additional out-of-jury testimony, heard the arguments and statements of counsel, carefully reviewed the situation and determined that due process and fairness did not require the reopening of this trial at that belated time to cover subjects that had generally and extensively been covered in the trial before the jury. Admittedly,

such is a judgment call, but a review of the record indicates that it is not a judgment call that was made in haste or precipitously, notwithstanding the desire, apparently of all concerned, to get the case to the jury on that particular day. The record will disclose that recesses were had in order to avail defense counsel of an opportunity to prepare and confer, and the court heard the statements and arguments of both the prosecution and defense counsel and made a determination that it was not necessary to and it was not prejudicial to refuse to reopen the case at that belated time, despite the request by the defendant that it do so. No doubt, the Office of the United States Attorney for the Northern District of Illinois was being abundantly cautious, as they should be. After reviewing this record and refreshing its recollection, this court is totally and completely comfortable with the decision that was made at that point in the trial.

The defendant asserts that the government withheld information vital to the defense. The court disagrees, in large part for the reasons discussed above. There is no question that for reasons that are readily apparent, the Assistant United States Attorney who tried this case, along with his supporting staff, were running gun shy when they disclosed information on Lawrence Griffin on December 10. Apparently, because of events in other cases with which this court is not directly and extensively familiar, it would appear that the prosecution in this case bent over backwards to avoid even the remote appearance of making any of the kinds of mistakes of which this prosecutor and his office have been accused in other cases. It is not the function of this Judge to consider those other cases because it has not heard the evidence that has been presented to other district judges and has not had the responsibility to rule on post-trial motions under 28 U.S.C. § 2255. Again, this court views this last flurry of paper as collateral to the issues in Mr. Kitchen's trial.

To the extent that issues have been raised by this defendant seeking either an acquittal or a new trial, those issues whether or not explicitly mentioned here are considered to be without merit and do not form any basis for either an acquittal or a new trial. On the subject of the motions to acquit which were filed at the end of the prosecution's case and at the end of all the case, the same were then considered to be without merit and a careful review of the record in retrospect sustains that initial conclusion.

This court believes that this case should go forward as scheduled for the sentencing at 10:30 a.m. on Thursday, March 25, 1993 in Chicago, Illinois. Each side should advise the other in writing at least 10 days in advance of that hearing the name and address of all witnesses which each side intends to call during the sentencing hearing. This court will welcome sentencing memoranda from each side, but the same *must* be filed at least by the end of the day, Friday, March 19, 1993, so that the court can consider it in advance of the sentencing hearing.

All post-trial motions are **DENIED.** The case will stand for sentencing as scheduled. **IT IS SO ORDERED.**