In the
United States Court of Appeals
For the Seventh Circuit

No. 97-3808

Isiah Kitchen,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 96 C 6932 (89 CR 908)--Allen Sharp, Judge.

Argued December 10, 1999--Decided September 14, 2000

Before Cudahy, Easterbrook and Rovner, Circuit Judges.

Cudahy, Circuit Judge.  Isiah Kitchen appeals the district court's denial of his motion under 28 U.S.C. sec. 2255. We have already detailed the facts underlying Kitchen's arrest and conviction in our decision on his direct appeal, see United States v. Kitchen, 57 F.3d 516 (7th Cir. 1995), but a very brief refresher is in order. Kitchen was associated with the El Rukn street gang, and in March of 1989 undercover agents posing as drug dealers arrested Kitchen during the course of a staged cocaine sale. Later that same day, agents recovered two firearms from the house that Kitchen shared with his girlfriend, Mary Williams. Kitchen was charged with both drug and firearm offenses, and on December 10, 1992, a federal jury convicted him of possession of cocaine with intent to distribute in violation of 21 U.S.C. sec. 841(a)(1) and of being a felon in possession of a firearm in violation of 18 U.S.C. sec. 922(g)(1). The district court sentenced Kitchen to a total of 15 years imprisonment. Kitchen filed a timely notice of appeal from his conviction and sentence on April 1, 1993. On direct appeal, this court affirmed the firearm conviction but found the evidence insufficient to sustain the cocaine charge. See Kitchen, supra. Kitchen's sentence was not changed, and he remains incarcerated.

The events relevant to this appeal, however,

took place between his conviction in the district court and our decision of his direct appeal. On February 22, 1994, while his direct appeal was pending, Kitchen filed a motion for a new trial on the basis of newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure in the district court. In that motion, he pointed to two pieces of newly discovered evidence that he argued entitled him to a new trial. First, he claimed to have new information regarding one of the government's trial witnesses. Second, Kitchen alleged that he had discovered evidence that revealed a scheme by the government to prevent Mary Williams (Kitchen's girlfriend) from testifying at trial. The briefing in Kitchen's direct appeal was stayed for almost a year, allowing the district court to decide Kitchen's Rule 33 motion, which it denied on July 25, 1994. Kitchen wanted to appeal that denial, but his counsel (who represented him both at trial and on direct appeal) inadvertently failed to file a notice of appeal, thus precluding our review of the denial of Kitchen's motion for a new trial. On June 7, 1995, as noted, we decided Kitchen's appeal of his conviction and sentence, but without consideration of the Rule 33 motion.

On October 23, 1996, Kitchen filed the present motion under 28 U.S.C. sec. 2255 in the district court. In his motion, Kitchen argued that he had been denied his right to effective assistance of counsel when his trial/appellate counsel failed to file a notice of appeal from the July 25, 1994 denial of his motion for a new trial. The district court denied Kitchen's sec. 2255 motion. That court assumed that Kitchen had a right to counsel for the motion for a new trial but concluded that Kitchen failed to establish that he had been prejudiced by his counsel's failure to file a notice of appeal. This court granted Kitchen a certificate of appealability on the following issue:

Whether petitioner was denied effective assistance of counsel due to his attorney's admitted failure "through inadvertence" to file a notice of appeal from the district court's denial of [a post-trial, as opposed to a post-appeal] motion for a new trial.

Kitchen v. United States, No. 97-3808 (7th Cir., Nov. 25, 1998) (order granting certificate of appealability) (citation omitted). Kitchen initially filed a pro se brief, and the government responded, but on June 30, 1999, counsel (Howard Eisenberg, dean and professor of law at Marquette University Law School) was appointed for Kitchen. Both sides rebriefed the case, and we proceeded to oral argument.

We review de novo the district court's denial of Kitchen's motion under 28 U.S.C. sec. 2255. See Lanier v. United States, 205 F.3d 958, 962 (7th Cir. 2000). Deciding whether Kitchen was denied effective assistance of counsel due to his attorney's failure to file a notice of appeal from the denial of his Rule 33 motion requires us to resolve three subsidiary issues: (1) whether Kitchen had a right to counsel for his pre-appeal motion for a new trial; (2) whether counsel's failure to file a notice of appeal was deficient performance; and (3) whether Kitchen is entitled to a presumption of prejudice, or, if he is not, whether he has shown prejudice. As explained in detail below, we hold that Kitchen had a right to counsel for his post-trial but pre-appeal Rule 33 motion. Counsel's failure to file a notice of appeal was clearly deficient performance, but, ultimately, Kitchen's ineffective assistance claim fails because he is not entitled to a presumption of prejudice and cannot demonstrate actual prejudice from the forfeited appeal.

I.  Right to Counsel

  Our initial inquiry in this case must be whether Kitchen had a right to counsel for his pre-appeal motion for a new trial because "[w]here there is no constitutional right to counsel there can be no deprivation of effective assistance." Coleman v. Thompson, 501 U.S. 722, 752 (1991). See also Wainwright v. Torna, 455 U.S. 586, 587-88 (1982)./1 The Supreme Court has established that a defendant's right to counsel attaches "at or after the time that judicial proceedings have been initiated against him," Kirby v. Illinois, 406 U.S. 682, 688 (1972), and once a defendant's right to counsel attaches, the right continues to apply "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Mempa v. Rhay, 389 U.S. 128, 134 (1967). It is equally well established that a criminal defendant enjoys this right to counsel through his first appeal of right, see Evitts v. Lucey, 469 U.S. 387, 396 (1985); Ross v. Moffit, 417 U.S. 600, 607 (1974), but that, once the direct appeal has been decided, the right to counsel no longer applies, see Finley v. Pennsylvania, 481 U.S. 551, 557 (1987). See also United States v. Gramley, 915 F.2d 1128, 1137 (7th Cir. 1990) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.").

  The timing of Kitchen's motion for a new trial is an important factor supporting his right to counsel in prosecuting the motion and in an appeal from an adverse determination in the

district court. His Rule 33 motion came well after the initiation of criminal proceedings (when his right to counsel attached, see Kirby, 406 U.S. at 689) and well before the decision of his direct appeal (when his right to counsel terminated, see Finley, 481 U.S. at 557). In addition, under governing principles, the nature of a motion for a new trial supports Kitchen's right to counsel: in a Rule 33 proceeding, a defendant "must face an adversary proceeding that--like a trial--is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented [defendant]--like an unrepresented defendant at trial--is unable to protect the vital interests at stake." Evitts, 469 U.S. at 396 (although referring specifically to a direct appeal). Kitchen could not have presented his new evidence for the first time in his direct appeal without having first fully pursued his Rule 33 motion. See United States v. Higham, 98 F.3d 285, 293 (7th Cir. 1996). The outcome of Kitchen's motion for a new trial (including the outcome of an appeal from an adverse judgment) could have had a substantial impact on the course of his criminal proceedings. It would not have, under any circumstances, entitled him to release, but were the motion to be granted, Kitchen would have received a second trial and an opportunity to present a (presumably) enhanced defense.

The government, however, argues that Kitchen had no right to counsel for his post-trial but pre-appeal motion for a new trial by pointing to several courts of appeals that have held, quite explicitly, that there is no right to counsel in Rule 33 proceedings. United States v. Tajeddini, 945 F.2d 458 (1st Cir. 1991); United States v. Lee, 513 F.2d 423 (D.C. Cir. 1975); United States v. Birrell, 482 F.2d 890 (2d Cir. 1973). By relying on these cases, the government overlooks the fact that Tajeddini, Lee and Birrell addressed only Rule 33 motions that were decided after the decisions in the respective defendants' direct appeals. See Tajeddini, 945 F.2d at 460; Lee, 513 F.2d at 424; Birrell, 482 F.2d at 891-92. As noted, timing is critical in the present issue, and because the Rule 33 motions in the cited cases from other circuits were filed and decided after the first appeal of right, they were characterized as collateral attacks, and it is well established that there is no constitutional right to counsel in collateral proceedings. See, e.g., Finley, 481 U.S. at 557.

However, it is wide of the mark to label a pre-appeal motion for a new trial as a "collateral attack." We have noted the converse proposition that "[w]hen made following the outcome of a direct appeal, a Rule 33 motion plainly is

'collateral' in the usual sense of that term." United States v. Woods, 169 F.3d 1077, 1078 (7th Cir. 1999). See also United States v. Evans, No. 99-1187, 2000 WL 1171971, at *4 (7th Cir. Aug. 18, 2000) ("[A]ny motion filed after the expiration of the time for direct appeal, and invoking grounds mentioned in [sec. 2255(1)], is a collateral attack for purposes of [sec. 2255(8)]."). Here, however, Kitchen's direct appeal had not yet been decided, so his motion for a new trial clearly did not "follow[ ] the outcome of [his] direct appeal."/2 Instead we can say that his motion for a new trial was in aid of the appeal of the conviction and sentence. The conclusion that Kitchen's motion for a new trial was not a collateral attack is further supported by the procedural consideration that, had Kitchen's counsel filed a notice of appeal from the denial of the motion, the Rule 33 appeal could have been consolidated with Kitchen's direct appeal. See United States v. Ellison, 557 F.2d 128, 132 (7th Cir. 1977). It would make no sense to label a pre-direct appeal Rule 33 motion as a "collateral attack" on the conviction, when the appeal from such a proceeding could be consolidated with the direct appeal of the conviction. A properly denominated collateral attack on a defendant's conviction--like a sec. 2255 motion--could never be consolidated with the direct appeal, and is not even part of the criminal proceeding itself. See Finley, 481 U.S. at 556-57; Fay v. Noia, 372 U.S. 391, 423-24 (1963). Therefore, because Kitchen's motion for a new trial was decided before our decision in his direct appeal, it may not be deemed a "collateral attack" on his conviction, and Kitchen had a right to counsel in prosecuting such a motion and in taking an appeal from its denial.

II.  Counsel's Performance

   Having determined that Kitchen had a right to counsel, we must now determine whether his right to effective assistance of counsel has been violated. In order to prevail on an ineffective assistance claim based on his counsel's failure to file a notice of appeal, Kitchen must satisfy the familiar test of Strickland v. Washington, 466 U.S. 668 (1984). See Roe v. Flores-Ortega, 120 S. Ct. 1029, 1034 (2000). Under Strickland, Kitchen must first demonstrate that his counsel's performance was deficient. See 466 U.S. at 687. An attorney's performance is deficient if, under the circumstances, it was unreasonable under prevailing professional norms. See id. at 688. The government argues that Kitchen cannot show deficient performance because Kitchen's counsel was partially successful on the direct appeal. The government explains:

In a narrow sense, reasonable counsel should file a notice of appeal from an order denying a new trial when requested to do so by the defendant. In a broader sense, however, failing to pursue one issue so strongly destined to fail, in light of counsel's otherwise fine performance, is not constitutionally unacceptable.

2d Gov. Br. at 17. While we think it sensible to view Kitchen's appeal as a whole, we are not entirely persuaded by the government's reasoning. The government is correct that, as a general matter, failing to pursue a particular issue is not necessarily deficient performance, for there is "[n]o particular set of detailed rules for counsel's conduct" Strickland, 466 U.S. at 688. But we must consider, along with all the other circumstances, the reason or reasons why an attorney takes (or fails to take) a particular action, see id. at 690. Although "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690, counsel's failure to file a notice of appeal here was not the product of any such strategic decision. Counsel has freely admitted that he failed to file a notice of appeal through "inadvertence." Forgetting to file a notice of appeal is far from a reasonable strategy and clearly falls "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Therefore, we reject the government's argument on this point: counsel's performance was deficient.

III.  Prejudice

  Merely demonstrating deficient performance, however, is not enough to succeed on an ineffective assistance claim. Under Strickland, Kitchen must also show that he was prejudiced by his counsel's deficient performance. See 466 U.S. at 687. Kitchen first argues that his counsel's failure to file a notice of appeal from the denial of the Rule 33 motion is per se constitutionally ineffective representation that requires no showing of prejudice by way of a likelihood of success on appeal. Prejudice, however, can be presumed only in the most egregious cases of ineffective assistance--those where "[p]rejudice . . . is so likely that case-by-case inquiry into prejudice is not worth the cost," id. at 692--and "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Id. See also Penson v. Ohio, 488 U.S. 75, 88 (1988); United States v. Cronic, 466 U.S. 648, 659 (1984). The Supreme Court recently held, in a case in which defense counsel failed to file a

notice of appeal for direct review of a conviction, that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim," Flores-Ortega, 120 S. Ct. at 1039, and need not demonstrate "the merits of his underlying claims," id. at 1038. Prior to Flores-Ortega, we had ruled similarly in Castellanos v. United States, 26 F.3d 717, 720 (7th Cir. 1994) (holding, in a case in which it was undisputed that the defendant requested that his attorney file a direct appeal, that "[a] defendant is entitled on direct appeal to legal aid . . . and he need not make a preliminary showing of 'prejudice' . . . .").

   Kitchen argues that he need not show a likelihood of success on appeal because this case is analogous to cases like Castellanos and Flores-Ortega. Although it is a close question, we must ultimately reject this argument. For in those cases in which the Supreme Court, as well as this and other circuits, have presumed prejudice from the failure to file a notice of appeal, defendants have had no assistance of counsel for any issues. See Flores-Ortega, 120 S. Ct. at 1033; Castellanos, 26 F.3d at 718. See also, e.g., Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998); Morales v. United States, 143 F.3d 94, 97 (2d Cir. 1998). Cf. Penson, 488 U.S. at 78-79 (defense counsel withdrew prior to appeal). Therefore, a presumption of prejudice has arisen when the defendant was hampered by "the complete denial of counsel," Flores-Ortega, 120 S. Ct. at 1038 (emphasis added), meaning that "the defendant never receive[d] the benefit of a lawyer's services in constructing potential appellate arguments," Castellanos, 26 F.3d at 718 (emphasis added). When "[n]o one has looked at the record with an advocate's eye," id., possible arguments on appeal are not even identified by an attorney, and it would be difficult for a court to evaluate the likelihood of success on appeal when the potential issues on that appeal were never identified. Cf. Castellanos, 26 F.3d at 718 (noting that although judges can "conscientiously" try "to imagine what a lawyer might have done, an advocate often finds things that an umpire misses.").

   Here, however, we need not employ our imaginations to determine what appealable issues were present in Kitchen's case. His counsel filed a timely notice of appeal from Kitchen's conviction and sentence and argued several issues before this court on direct appeal--some with success. Thus, one cannot characterize such a situation as one in which Kitchen was "abandoned"

by his attorney or the denial of counsel on appeal was "complete." His attorney's deficient performance did not "deprive[ ] [Kitchen] of the appellate proceeding altogether." Flores-Ortega, 120 S. Ct. at 1038. Rather, Kitchen's counsel, through his deficient performance, foreclosed our review of one issue-- whether Kitchen was entitled to a new trial on the basis of newly discovered evidence. This is unlike the situation in which the possible issues on appeal have not even been identified by an advocate, and prejudice must be presumed. See, e.g., Penson, 488 U.S. at 88. Here, the abandoned issue has been clearly defined, and no reason has been offered why any prejudice resulting from its abandonment may not be reliably determined.

We believe that Kitchen's situation most closely resembles one in which his counsel has failed to preserve a particular issue for appellate review./3 Our most recent decision addressing the omission of one issue from an appeal is Mason v. Hanks, 97 F.3d 887 (7th Cir. 1996). Under Mason, a defendant must demonstrate prejudice by showing that the "omitted issue 'may have resulted in a reversal of the conviction, or an order for a new trial,'" 97 F.3d at 893 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)), and only if the defendant makes that showing, will we deem the lack of effective assistance prejudicial, see id. Thus, to determine whether Kitchen was prejudiced by his counsel's deficient performance we must look at the possible merits of the appeal from Kitchen's denied Rule 33 motion./4 If there was merit to Kitchen's Rule 33 motion, his appeal from its denial would probably have been successful and Kitchen has demonstrated prejudice. If, however, his appeal would not likely have resulted in reversal, Kitchen has not demonstrated prejudice, and his ineffective assistance claim fails. Kitchen presented two pieces of newly-discovered evidence that he argues entitled him to a new trial. We address each in turn.

In his Rule 33 motion, Kitchen first claimed to have new evidence regarding Lawrence Griffin, who testified for the government at trial about the staged cocaine purchase. (Kitchen does not press this portion of the motion on appeal, but, for the sake of completeness, we briefly discuss it.) This piece of claimed new evidence concerned Griffin's receipt of allegedly unauthorized payments that constituted undisclosed benefits from the government. Apparently, the government had been paying Griffin fees for "decoding" various taped conversations and only completely disclosed this fact on the last day of the trial./5 This certainly would have been useful for impeachment of Griffin's testimony by tending

to show bias,/6 but we have clearly stated that "impeachment evidence cannot provide the basis for a new trial." United States v. Austin, 103 F.3d 606, 609 (7th Cir. 1997). See also United States v. Young, 20 F.3d 758 (7th Cir. 1994). Accordingly, the new evidence about Griffin would not have entitled Kitchen to a new trial, and had Kitchen argued this issue, his argument would have failed for lack of demonstrated prejudice.

Kitchen's argument to us focuses exclusively on the second piece of newly-discovered evidence that he raised in his Rule 33 motion. Kitchen claims to have uncovered evidence that the government intimidated one of his potential witnesses, Mary Williams, who, on this account, did not testify. Had Ms. Williams testified, she would have explained that the guns that formed the basis of Kitchen's sec. 922(g) conviction were hers and her cousin's, not Kitchen's. The intimidation of Ms. Williams, claims Kitchen, involves a second search of her home and her arrest in 1992, that was, allegedly, engineered by Assistant U.S. Attorney Hogan (Kitchen's prosecutor). Another factor was Hogan's decision to ask her incriminating questions if she took the stand. Williams did not testify at trial, and in an affidavit submitted by Kitchen with his sec. 2255 motion, she claims that:

Mr. Hogan cautioned me against testifying for Isiah Kitchen. In addition, the agents who searched my home on October 5, 1989 made what I considered were threats against my home, car, possessions, and, most importantly, children. The agents had indicated to me that if I did not cooperate with them (and I took that to mean if I did not say the guns belonged to Mr. Kitchen) I would be harmed by them, harmed in the sense that they would attempt to take my home and children away from me.

Williams's Aff. para. 21. Of course, a prosecutor may properly "caution" a defense witness about the risks of testifying--e.g., the danger of self-incrimination--but the prosecution cannot "interfere[ ] with a defense witness' free and unhampered choice to testify." United States v. Jackson, 935 F.2d 832, 846 (7th Cir. 1991). Thus, "[w]here . . . the substance of what the prosecutor communicates to a witness is 'a threat over and above what the record indicate[s] was timely, necessary, and appropriate,' the inference that the prosecutor sought to coerce a witness into silence is strong." Id. at 847 (quoting United States v. Simmons, 670 F.2d 365, 369 (D.C. Cir. 1982). But, Kitchen's claim of witness coercion falters because he cannot show that these alleged threats by Hogan or by other government agents had any effect on Ms.

Williams's willingness to testify. See United States v. Hooks, 848 F.2d 785, 802 (7th Cir. 1988) (rejecting witness coercion claim, in part because "[w]e have found no government interference with the defense witnesses' choice not to testify"); United States v. Viera, 839 F.2d 1113, 1115 (5th Cir. 1988) (en banc) (rejecting witness coercion claim because "[n]o showing had been made that a prospective witness was intimidated or that he refused to testify"); United States v. Blackwell, 694 F.2d 1325, 1343 (D.C. Cir. 1982) ("Where, as here, the witness herself never refuses to testify, the nexus between the error and the loss of her testimony to the defendant is inevitably attenuated . . . .").

Far from demonstrating that she was intimidated by the alleged scheme orchestrated by the government, Ms. Williams's affidavit shows that she was totally unfazed. We have, at most, allegations of a failed attempt to coerce a witness. In her affidavit, Williams explains that Kitchen's counsel attempted to reach an "understanding" with the court and the government that no punitive action would be taken against her./7 She further explains that "[a]lthough no understanding was reached, I still wanted to get on the stand and tell the truth about the ownership of the guns." Williams's Aff. para. 23. Thus, it is quite apparent from Ms. Williams's affidavit that she was ready, willing and able to testify despite the alleged threats. See also id. para. 23 ("When the time for Mr. Kitchen's trial arrived, I wanted to testify on his behalf."); id. para. 25 ("If I ever had the opportunity to take the stand regarding the issue of ownership and possession of the guns . . . I would testify . . . ."). The alleged conduct of the government actors may have been egregiously inappropriate (accepting, of course, Williams's allegations), but in the face of her clear statements that it had no effect on her willingness to testify, the alleged behavior (even if true) cannot be the basis of a witness coercion claim. We need evidence not only that there was an attempt to coerce a witness but also that the attempted coercion actually influenced the witness's decision to testify or not to testify. On the basis of the allegations, Kitchen asks us to "infer" that Williams was coerced and to remand the issue for a hearing. We will not do this because Ms. Williams's own affidavit flat out refutes Kitchen's desired inference that she was dissuaded from testifying.

Then why did Ms. Williams not take the stand during Kitchen's trial? Simply put, because the defense decided not to call her as a witness. Kitchen's brief explains:

As a result of [the 1992] search, Williams was charged in the state court with several offenses. Defense counsel wanted to call Ms. Williams to testify that she had these weapons in her home in 1992 to show that, unrelated to Petitioner, she regularly kept weapons in her home./8 The U.S. Attorney responded by saying that if Williams testified about the 1992 weapons, he would cross examine her about whether she was selling drugs with [Kitchen] in 1989.

Originally defense counsel was concerned that questioning Williams would raise Fifth Amendment problems as to her pending 1992 state court charges. After the prosecutor mentioned the possibility of cross examining Williams about events that occurred in 1989, Judge Sharp and the U.S. Attorney began discussing possible Fifth Amendment issues relating to acts that occurred in 1989. Defense counsel then decided not to call Williams because of problems she might face on her Fifth Amendment privilege.

Appellant's Br. at 19-20 (citations and quotations omitted) (emphasis and footnote added). The defense counsel deciding not to call Williams because she ran the risk of incriminating herself (or asserting her Fifth Amendment right not to testify) on either direct or cross-examination is a far cry from Williams's refusing to testify because she had been intimidated by the government. And surely Mr. Hogan should properly have been free to cross-examine Ms. Williams regarding her activities with Kitchen in 1989. It bears repeating that Williams, despite the risk of self-incrimination, "still wanted to get on the stand and tell the truth about the ownership of the guns" at the trial. Williams's Aff. para. 23. In her affidavit, Williams states that "[i]t had always been my understanding that I was not called to the stand because of Mr. Kitchen's concern for my own welfare." Williams's Aff. para. 24. He possibly did Williams a great service by keeping her off the stand, but Kitchen cannot now excuse his decision not to call Williams by alleging that she was coerced. Accordingly, Kitchen's witness coercion argument fails.

In sum, Kitchen had a right to counsel in the appeal from his motion for a new trial, which was denied by the district court before our decision in his direct appeal. Counsel's failure to file a notice of appeal from the district court's denial of the Rule 33 motion was deficient performance. However, Kitchen was not entitled to a presumption of prejudice, and his ineffective assistance of counsel motion ultimately fails because he cannot show that his counsel's failure

to appeal prejudiced him. Therefore, we Affirm the district court's denial of Kitchen's sec. 2255 motion.

/1 We note for the sake of completeness that this circuit has confronted this factual situation before in Perez v. United States, 124 F.3d 204, 1997 WL 534459 (7th Cir. Aug. 25, 1997) (unpublished order). In that case, Perez filed a sec. 2255 motion arguing that he had been denied his right to effective assistance of counsel when his attorney failed to file a notice of appeal from the denial of his Rule 33 motion. Just as in the present case, Perez's counsel had already timely filed a notice of appeal from Perez's conviction and sentence and that appeal had yet to be argued. In Perez, the panel addressed the merits of Perez's ineffective assistance claim--rejecting it because he failed to show prejudice--and thereby implicitly concluded that Perez did have a right to counsel in the Rule 33 proceedings. However, both because Perez is unpublished and because it contains no analysis of the right to counsel issue, we do not rely on it here.

/2 The Supreme Court has also used the decision of the direct appeal as the temporal boundary that defines a collateral attack for which a defendant has no right to counsel. In Finley v. Pennsylvania, the Court stated that a motion for postconviction relief is a "collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction."  481 U.S 551, 557 (1987).

/3 This analogy is bolstered by the fact that had his counsel filed a timely notice of appeal from the denial of his motion for a new trial, that appeal would have been consolidated with Kitchen's direct appeal. See United States v. Ellison, 557 F.2d 128, 132 (7th Cir. 1977). We also note that our previous analysis of counsel's performance jibes with the performance analysis used when counsel fails to appeal a particular issue: "when appellate counsel omits (without legitimate strategic purpose) 'a significant and obvious issue,' we will deem his performance deficient." Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

/4 Because we must consider the hypothetical appeal, we must keep in mind that we review the district court's denial of a motion for a new trial under Rule 33 for abuse of discretion only. See United States v. Austin, 103 F.3d 606, 608 (7th Cir. 1997).

/5 The government had already disclosed that Griffin

had been paid fees for "decoding," but on the last day of trial added (1) that someone in the United States Attorney's office had recently had a conversation with a paralegal in which the paralegal admitted arranging for Griffin to receive fees in prior months when, in fact, Griffin had not been working on tapes and (2) that Griffin and another government paralegal had a drink together while waiting for lunch one day.

/6 At a hearing outside of the jury's presence, Kitchen's attorney was given the opportunity to voir dire Griffin about the additional information. The district court then denied the defense request to reopen testimony and recall Griffin for further cross-examination in front of the jury. See United States v. Kitchen, 832 F. Supp. 217, 220 (N.D. Ill. 1993).

/7 Presumably, this "understanding" was some sort of immunity.

/8 The fact that defense counsel wanted to call Ms. Williams to testify that she had these weapons in her home in 1992 undermines Kitchen's intimation that the 1992 search and arrest were part of the scheme to coerce Williams. As the district court noted, "[i]t is difficult for this court to ascribe prosecutorial misconduct where the events allegedly engineered inured to the benefit of the defense." United States v. Kitchen, 858 F. Supp. 782, 792 (N.D. Ill. 1994).