### UNITED STATES of America

v.

### Ibrahim Ahmed Mahmoud AL QOSI.

### CMCR 13–001, 13–006.

United States Court of Military Commission Review.

Signed April 24, 2014.

---

42. *Id.*

45. *Id.* (emphasis added).

**1200**

Captain Mary R. McCormick, JAGC, U.S. Navy, on briefs for petitioner.

Commander Walter B. Ruiz, JAGC, U.S. Navy, on motion to intervene on behalf of Mustafa Ahmed Adam al Hawsawi.

James P. Harrington, on motion to intervene on behalf of Ramzi Bin al Shibh.

Brigadier General Mark S. Martins, U.S. Army; Captain Edward S. White, JAGC, U.S. Navy; and Danielle S. Tarin, on briefs for respondent and briefs in opposition to intervention.

Before the Court ALDYKIEWICZ, HARNEY, WARD, POLLARD, JAMISON, Appellate Judges.

### PUBLISHED OPINION OF THE COURT

POLLARD, Judge:

On July 7, 2010, Ibrahim Ahmed Mahmoud al Qosi ("Al Qosi"), in accordance with a written pretrial agreement, pleaded guilty to and was found guilty by a military commission of conspiracy to commit terrorism and provide material support for terrorism, and the substantive charge of providing material support to al Qaeda, a terrorist organization, in violation of 10 U.S.C. §§ 950t(29) and 950t(25) (2009).

On August 11, 2010, the military commission sentenced Al Qosi to confinement for 14 years. The convening authority approved the sentence on February 3, 2011, but, as required by the pretrial agreement, suspended execution of confinement in excess of two years. After completing the unsuspended confinement portion of his sentence, Al Qosi was transferred to his native Sudan on July 10, 2012, where he currently remains. Pet. for Extraordinary Relief 4; Respondent's App. 89.

On September 12, 2012, the Office of Military Commission Chief Defense Counsel (CDC) appointed Captain (CAPT) Mary McCormick, USN, as appellate counsel to represent Al Qosi. Pet.App. 23. CAPT McCormick, in petitioner's name, filed applications in this Court for writs of mandamus and prohibition, asserting jurisdiction under the All Writs Act, 28 U.S.C.

§ 1651(a).[1] She sought a writ of mandamus to compel funding from the Department of Defense that would allow her to travel to Sudan with an interpreter to seek out and meet with Al Qosi so that she could consult with him, and he could make an informed decision on whether he wanted her to represent him and whether she should challenge his military commission conviction. In another writ application, CAPT McCormick sought an order extending the two-year period in which Al Qosi could file a petition for a new trial. *See* R.M.C. 1210(A). However, her writ applications did not describe any communication with Al Qosi or attempts to contact him by telephone, mail, or video teleconference concerning any of the matters raised in the petitions.

This Court denied the application to extend Al Qosi's time to seek a new trial by order dated February 1, 2013. CAPT McCormick then filed with the convening authority in Al Qosi's name a petition for a new trial. On December 13, 2013, the convening authority denied the petition, *inter alia,* on the ground that the petition was not signed by Al Qosi or his authorized designee, as required by Reg. Tr. Mil. Comm. § 26–4b. *See also* Rule for Military Commission (R.M.C.) 1210(C). The convening authority then referred his decision to this Court for further review, as mandated by R.M.C. 1210(E).

Thus, pending before this Court are CAPT McCormick's writ applications to compel travel funds, an appeal of the convening authority's denial of CAPT McCormick's petition for a new trial, and another writ application filed by CAPT McCormick concerning an email search by Washington Headquarters Services ("WHS") that resulted in at least one potentially privileged email between Al Qosi's defense counsel inadvertently being provided to respondent's counsel.

For the reasons set forth below, we deny each of the writ applications and affirm the denial of the petition for a new trial. Our decision principally turns on the ground that the record contains no evidence that an attorney-client relationship exists between CAPT McCormick and Al Qosi. Without such a relationship, CAPT McCormick may not initiate litigation, file any pleading or seek any relief on behalf of Al Qosi.

**The Petitions for Writ Relief and a New Trial**

■ In the proceedings below, Al Qosi was represented by retained civilian and appointed military counsel. Tr. 126–27. During his plea allocution, he acknowledged that he had consulted with his lawyers concerning his case and his guilty plea, and he was satisfied with their representation. Tr. 493–95. Al Qosi further acknowledged that, as part of his plea agreement, he waived his appellate and other post-conviction rights as specified in the agreement to the extent permitted by law. Tr. 484, 491–93. Specifically, he agreed to waive any right that he had "to collaterally attack [his] conviction, [ ] sentence, and or [ ] detention in any court or proceeding on any grounds." Tr. 484. However, he did retain the right to petition the convening authority for a new trial under R.M.C. 1210. AE 109.

---

1. Petitioner's Brief in Support of Pet. 33–34; Petitioner's Reply 4–5; 7–8. Respondent opposes jurisdiction under the All Writs Act, primarily relying upon *Al Zahrani v. Rodriguez,* 669 F.3d 315, 318 (D.C.Cir.2012). Respondent's Brief in Opposition to Pet. 1–3; Respondent's Surreply to Petitioner's Emergency Motion 2–5. We need not address those questions because, as a threshold matter, we conclude that, under the facts presented, CAPT McCormick did not establish that she has an attorney-client relationship with Al Qosi, and, therefore, she may not seek any of the relief sought on his behalf.

■ In the absence of any evidence to the contrary, we presume that Al Qosi's trial defense counsel properly and effectively consulted with him about his agreement to waive those rights and then abided by Al Qosi's decisions not to appeal or collaterally attack his conviction. *See United States v. Webber,* 208 F.3d 545, 551 (6th Cir.2000) (applying a "strong presumption" of counsel competency and citing *Strickland v. Washington,* 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

CAPT McCormick contends that her appointment as appellate defense counsel for Al Qosi suffices to create an attorney-client relationship and to permit her to engage in collateral litigation in his name.[2] She contends that Al Qosi has a right to appeal his conviction because his waiver of his appellate rights was defective for a number of reasons, including his apparent failure to file a written waiver within ten days following the convening authority's action on his case, as required by 10 U.S.C. § 950c(b)(3).[3] If the waiver was, therefore, ineffective, CAPT McCormick argues, then the convening authority would be required to refer Al Qosi's case to this Court for plenary appellate review. *See* 10 U.S.C. § 950c(a). This argument does not address what effect, if any, an effort by Al Qosi to appeal or collaterally attack his conviction might have on his pretrial agreement.

Al Qosi, however, has never manifested any interest in, or intention of, having CAPT McCormick represent him in post-conviction matters. No court has appointed CAPT McCormick as Al Qosi's attorney. *See, e.g.,* 18 U.S.C. § 3006A(a)(2) (providing for judicial appointment of counsel in Article III courts for trial and appellate litigation). CAPT McCormick admits that her attempts to communicate with Al Qosi so that he could make a "knowing, informed decision as to whether and how to exercise his [post-conviction] rights" have been unsuccessful. Pet. for Extraordinary Relief 5.

In our February 12, 2014 order, we asked CAPT McCormick to tell us whether

Al Qosi had expressly or impliedly consented to (a) her or any other military or civilian lawyer representing him in any post-conviction matter (other than the January 14, 2011 clemency petition); and (b) her filing the January 4, 2013 Petition in this Court [and/or] the February 1, 2013 petition for a new trial filed with the Convening Authority.

CAPT McCormick in her response did not aver that Al Qosi had consented to her or any other lawyer representing him in post-conviction matters or had authorized her to file either the January 14, 2013 petition or the February 1, 2013 petition on his behalf. *See* Feb. 20, 2014 Response to Show Cause Order.

■ The CDC unquestionably has statutory and regulatory authority to appoint counsel for cases on direct appeal to our

---

**2.** Feb. 20, 2014 Response to Show Cause Order 1. CAPT McCormick's reliance upon *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), to assert her right to act on Al Qosi's behalf before our Court is not persuasive. *Polk County* indicates that, for purposes of tort liability, upon appointment, a public defender has an attorney-client relationship with the defendant and "does not act under color of state law when performing the traditional functions of coun-

sel to a criminal defendant." *Id.* at 317, 102 S.Ct. 445.

**3.** Al Qosi's trial military counsel agreed to be responsible for taking all necessary post-trial actions on his behalf. Tr. 856. However, it appears that neither Al Qosi nor his counsel submitted the written waiver of post-conviction rights to the convening authority, as required by the statute.

Court. However, no direct appeal is currently pending. There is nothing in the record that Al Qosi sought appellate counsel, wanted to challenge his conviction or consented to CAPT McCormick acting as his attorney. There also is nothing in the statute or regulations that specifically address the CDC's appointment of counsel for post-conviction collateral litigation.[4] Thus, what is before us is whether the CDC's appointment of counsel for post-conviction collateral litigation can establish an attorney-client relationship in the absence of a request by the defendant for legal assistance or some other affirmative indicia of the defendant's consent to the appointed representation.[5]

We conclude that more is required to establish a post-trial attorney-client relationship for collateral litigation than the CDC's appointment of CAPT McCormick as appellate counsel. "[A]cceptance by the accused is an absolute necessity to the establishment of an attorney-client relationship." *United States v. Iverson*, 5 M.J. 440, 443 (C.M.A.1978) (citing *United States v. Brady*, 8 USCMA 456, 460, 24 C.M.R. 266, 270 (1957)). The attorney-client relationship is one of agency and "one cannot act as an agent, without the knowledge and consent of the principal." *Iverson*, 5 M.J. at 443 (citations omitted). Thus, under the facts of this case, no attorney-client relationship is established just by the CDC appointing appellate counsel. Rather, Al Qosi must manifest, in some way, an acceptance of the appointed counsel as his lawyer.

Even if the CDC's appointment of CAPT McCormick created an attorney-client relationship with Al Qosi, CAPT McCormick still must obtain Al Qosi's informed consent before she may file any pleading that implicates or may implicate his fundamental rights such as those afforded by his pretrial agreement. The Supreme Court has made this clear, holding in a criminal case that

[a]n attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy.... A defendant, this Court affirmed, has the ultimate authority to determine whether to ... take an appeal. Concerning [this decision], an attorney must both consult with the defendant and obtain

4. *See* 10 U.S.C. § 950h(a) ("The Secretary of Defense shall, by regulation, establish procedures for the appointment of appellate counsel for the United States and for the accused in military commissions under this chapter."); 10 U.S.C. § 950h(c) ("The accused shall be represented by appellate counsel appointed under subsection (a) before the United States Court of Military Commission Review."); Reg. Tr. Mil. Comm. § 24–5c (2011) (the Chief Defense Counsel will appoint appellate counsel for the accused for "all levels of appeal."). *See also Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). "There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted).

"[I]t is well established that there is no constitutional right to counsel in collateral proceedings." *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir.2013) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and quoting *Kitchen v. United States*, 227 F.3d 1014, 1019 (7th Cir. 2000)). As an exception to *Coleman*, a defendant has a right to counsel at a collateral proceeding when it is the "first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez v. Ryan*, —— U.S. ——, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012).

5. Whether the CDC has the authority to appoint counsel for post-conviction litigation when requested by a defendant is not before us, and we express no opinion regarding that question.

consent to the recommended course of action.

*Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (internal quotation marks and citations omitted). *See also Roe v. Flores–Ortega*, 528 U.S. 470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("the decision to appeal rests with the defendant."); *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (holding that, under settled law, the accused has "the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *In re Sealed Case*, 527 F.3d 174, 175 (D.C.Cir. 2008) (discussing duty to consult); *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A.1994) (the choice to appeal is the accused's decision) (citing Standard 4–5.2(a), ABA Standards for Criminal Justice, The Defense Function (3d ed.1993)).

■ An effort to either have his waiver declared invalid or appeal his conviction could implicate whether Al Qosi has breached his pretrial agreement not to appeal in exchange for the benefits of that agreement. "[A] plea agreement is a contract," and "courts will look to principles of contract law to determine whether a plea agreement has been breached." *United States v. Jones*, 58 F.3d 688, 691 (D.C.Cir. 1995); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Ahn*, 231 F.3d 26, 35 (D.C.Cir.2000) (both applying contract analysis to plea agreements). If it is determined that Al Qosi is in breach of this pretrial agreement by seeking to have his waiver declared ineffective or by appealing his conviction, then he may lose the benefits of his pretrial agreement or be subjected to further prosecution by the govern-

ment. Thus, any action that may breach Al Qosi's pretrial agreement or jeopardize his rights thereunder poses a fundamental issue, and it is for Al Qosi alone to decide if he wishes to pursue such a course of conduct. Any action by counsel in this regard, therefore, requires the client's informed consent before counsel may act. No such consent is present in this case.

CAPT McCormick relies on *United States v. Miller*, 63 M.J 452, 456 (C.A.A.F. 2006), to argue that "detailed appellate counsel must submit an appeal to the service Court of Criminal Appeals even in the absence of communication with the client." Feb. 20, 2014 Response to Show Cause Order 5, note 1. CAPT McCormick's reliance on *Miller* is misplaced. *Miller* involved a direct appeal in which the accused received correspondence from his counsel and "felt assured that [he] had an effective advocate who would represent him on appeal. . . ." *Miller*, 63 M.J. at 455. Thus, there was evidence in the record that Miller accepted detailed appellate counsel as his attorney. That is not the case here. Moreover, Miller did not waive his appellate rights as part of any pretrial agreement.

We, therefore, conclude that CAPT McCormick must first establish that she has an attorney-client relationship with Al Qosi before she may act as his attorney. The record before us does not demonstrate any such relationship. Since she has no authority, express or implied, to file applications for writs of mandamus and prohibition in Al Qosi's name, the applications that she filed in this Court are a nullity. We similarly conclude for the same reason that CAPT McCormick also had no authority to seek a new trial on Al Qosi's behalf or to represent Al Qosi in any appeal of the denial of the petition for a new trial.[6]

6. We do not mean to suggest that CAPT McCormick was not acting in good faith in

*See United States v. Moss,* 73 M.J. 64, 69 (C.A.A.F.2014) (holding "since the decision to appeal to this court is personal to an appellant, and because Moss did not authorize the appeal, this court lacks statutory jurisdiction under Article 67(a)(3) and the appeal must be dismissed."). *See also United States v. El–Mezain,* 664 F.3d 467, 578 (5th Cir.2011).

■ In addition, Al Qosi's informed consent was required before a petition for a new trial could be filed. His rights under his pretrial agreement might be adversely affected if a new trial was granted. This raises a fundamental issue that requires Al Qosi to give his consent before counsel may proceed on his behalf. No such authorization exists here. Therefore, CAPT McCormick had no authority to file the petition for a new trial in Al Qosi's name. It, too, is a nullity.

■ Even if the petition for a new trial was not a nullity, it is procedurally defective. The applicable regulation required the petition to be signed by Al Qosi or someone with specific authority to sign it.[7] Here, the petition was not signed by Al Qosi or anyone he authorized to sign it on his behalf. *See* R.M.C. 1210(C); Reg. Tr. Mil. Comm. § 26–4b. Thus, on December 13, 2013, the convening authority denied the petition for new trial on this ground, stating:

> Rule for Military Commission (R.M.C.) 1210(C) states that a petition for new trial shall be signed under oath or affirmation by one of the following:
>
> (1) the accused;

(2) a person possessing the power of attorney of the accused for that purpose; or

(3) a person with the authorization of an appropriate court to sign the petition as the representative of the accused.

> [CAPT McCormick, you] do not fall under any of the categories [of persons authorized to sign the petition], and you do not enjoy an attorney-client relationship with the accused, as you have not demonstrated that you have ever met, spoken with, or made written contact with him. As such, I find that the petition is not properly filed, as there is no indication that it was done with the accused's knowledge or consent.

We agree with this conclusion, and also affirm the denial of the petition for new trial for the reasons stated by the convening authority.

### Writ Applications Concerning Privileged Email

■ By Orders dated February 12 and 26, 2013, we directed the government to undertake for a stated period the collection of electronic communications "between the Government, and the Petitioner or any member of the Petitioner's trial defense team or Appellate Defense Counsel regarding waiver or withdrawal of appellate review...." The orders were issued to seek clarification on whether Al Qosi's appellate waiver had been timely filed, and to learn the facts and circumstances surrounding the filing or failure to file the waiver.

The search was undertaken by a vendor retained by WHS. On March 22, 2013, the respondent's counsel began reviewing

---

taking steps that she believed were required to protect Al Qosi's rights.

7. Reg. Tr. Mil. Comm. § 26–4b ("The petition will be signed under oath or affirmation by the petitioner, a person possessing the power of attorney of the petitioner for that purpose, or a person with the authorization of an appropriate court of law to sign the petition as the petitioner's representative.").

more than 540,000 emails provided to it. One of those emails was a communication between and among Al Qosi's counsel. Respondent's counsel promptly reported this potential breach of confidentiality to the Court. Respondent's counsel explained that counsel had not read the content of the email, review of the emails was terminated, and others in respondent's office were told not to review any of the emails.

On March 29, 2013, CAPT McCormick, in Al Qosi's name, filed a new writ petition asking, among other relief, that the Court order a halt to the email search, appoint a special master to investigate what had occurred, and issue a protective order for all privileged emails. On April 1, 2013, we ordered respondent to immediately cease all searches of these emails.[8] Subsequently, Mustafa Ahmed Adam al Hawsawi and Ramzi Bin al Shibh, two of the accused in *United States v. Khalid Shaikh Mohammad, et al.,* pending before a military commission at Naval Station Guantanamo Bay, Cuba, filed motions to intervene in the litigation concerning the electronic record search because of a concern that the search may have collected privileged emails sent by or to their counsel. Al Hawsawi and Al Shibh also raised with the trial judge in their case the security of privileged emails sent through Department of Defense servers.

Modern day civil and criminal discovery involves huge amounts of electronically stored information ("ESI"), and, in particular, emails. It is not uncommon for the collection, review and production of ESI to involve multiple terabytes (1000 gigabytes) of data. It is an unfortunate reality that privileged documents inadvertently are produced to an adversary in such circumstances. *See, e.g., Hopson v. City of Baltimore,* 232 F.R.D. 228, 244 (D.Md.2005). Recognizing this, the Federal Rules of Evidence recently were amended to make clear that an inadvertent production of privileged ESI does not necessarily waive the privilege. *See* Rule 502(b), Federal Rules of Evidence. On the record before us, there is no reason to believe that the confidentiality of defense counsel's communications has been breached. Given this, we see no need for any further action regarding the collected emails.

The broader issue raised by Al Qosi and the proposed interveners has to do with the security of defense counsel's email sent through servers controlled by the Department of Defense. This issue is being addressed by the Office of Military Commissions, the prosecution and defense counsel, and the military commission trial judge in the *United States v. Khalid Shaikh Mohammad, et al.* As for the interveners, to the extent that any of the accused contends that he has been aggrieved by an intrusion into privileged communications, that issue can be raised below and on direct appeal in the event of a conviction. As for Al Qosi, if he elects at a later time to pursue post-conviction litigation, he can raise any alleged breach of defense counsel's privileged electronic communications that he contends has caused him harm.

Accordingly, for the reasons stated, we deny the applications for relief filed by CAPT McCormick in Al Qosi's name regarding the review of emails collected by WHS as previously ordered by the Court. We further deny the motions to intervene.

---

**8.** The respondent's disclosure of the potential breach of attorney-client confidentiality and not CAPT McCormick's status, or lack thereof, as attorney for Al Qosi was dispositive in our decision to issue the April 1, 2013 order. Stated alternatively, nothing in our decision to issue the order created or recognized an attorney-client relationship where none existed.

Therefore, it is hereby

**ORDERED** that requests for extraordinary relief filed in Al Qosi's name concerning the funding of travel by CAPT McCormick to consult with Al Qosi and the email search directed by this Court are denied and the writs are dismissed, the convening authority's denial of the petition for a new trial is affirmed and the motions by Al Hawsawi and Al Shibh to intervene are denied.

ALDYKIEWICZ, HARNEY, WARD, and JAMISON, JJ., concur.