(18 P.3d 259)

No. 83,993

LANCE C. CELLIER, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed January 26, 2001.

*Richard Ney*, of Law Offices of Richard Ney, of Wichita, for appellant.

*Mark Goodman*, county attorney, *Joe E. Lee*, former county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., KNUDSON, J., and JACK L. BURR, District Judge, assigned.

ELLIOTT, J.: Following the affirmance by the Kansas Supreme Court of his convictions of first-degree premeditated murder and aggravated kidnapping, see *State v. Cellier*, 263 Kan. 54, 948 P.2d 616 (1997), Lance C. Cellier filed a K.S.A. 60-1507 motion based on five allegations of ineffective assistance of counsel. He appeals the denial of his motion. We affirm.

A thorough understanding of the factual and procedural background of the criminal trial underlying this 60-1507 action as documented in the Supreme Court's opinion is important in understanding the arguments Cellier now advances. Throughout this opinion, the "1507 court" refers to the district court which heard the 1507 motion and the "trial court" refers to the court which heard the underlying criminal trial.

For present purposes, the two landmark cases on the issue of ineffective assistance of counsel are *Strickland v. Washington*, 466

U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984), and *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985). *Strickland* announced the now familiar test of evaluating a claim of ineffective assistance of counsel. A defendant must show: (1) counsel's performance "fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) the deficient performance prejudiced the defendant, 466 U.S. at 694.

Regarding the "performance prong," our Supreme Court wrote in *Chamberlain*:

"The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 236 Kan. at 656-57.

*Chamberlain* also set forth the generally applicable standards for evaluating the prejudice prong as follows:

" 'With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.' " 236 Kan. at 657.

We need not address the performance prong if the defendant fails to prove prejudice. *State v. Pink*, 236 Kan. 715, 732, 696 P.2d 358 (1985), *overruled in part on other grounds State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986).

As with all applications of the *Strickland* test, whether a defendant has made the requisite showing depends on the facts of the particular case. See *Strickland*, 466 U.S. at 695-96. When, as here, the 60-1507 court has made findings of fact and conclusions of law, this court on appeal reviews whether the decision reached by the trial court follows as a matter of law from the facts stated as its

basis and also whether the facts so stated have any substantial support in the evidence. *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997). We do not reweigh the testimony or the credibility of witnesses. At the same time, our review of the performance and prejudice components remains de novo as mixed questions of law and fact. 262 Kan. at 322. We now turn to Cellier's five claims.

### *Was trial counsel ineffective when counsel failed to preserve one issue for direct appeal?*

The trial court denied Cellier's motion to suppress four statements made to police. *Cellier*, 263 Kan. at 63. The Supreme Court refused to address Cellier's appeal of that ruling because trial counsel did not properly object at trial to the admission of the statements. 263 Kan. at 65 (citing *State v. Milo*, 249 Kan. 15, 18, 815 P.2d 519 [1991]) ("When . . . a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal."). Cellier now argues trial counsel was ineffective by failing to preserve the issue for appellate review.

Following an evidentiary hearing on Cellier's K.S.A. 60-1507 motion, the 1507 court held that while counsel breached an essential duty in failing to object to the admission of the evidence, there was no prejudice because "the statements were knowingly and voluntarily made in compliance with the *Miranda* requirements"; thus, "there was not a reasonable probability that the trial court's suppression of the defendant's confession would have been overturned [on appeal]."

Cellier argues the 1507 court erred because counsel's deficient performance is ineffective per se and prejudice is presumed. As noted above, the State does not contest the 1507 court's finding that trial counsel breached an essential duty; thus, the only issue is whether Cellier suffered prejudice. We begin by addressing what prejudice Cellier must demonstrate.

Generally, in order to demonstrate prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000). This showing of prejudice is required in cases where the

defendant's claim involves counsel's performance during the course of a legal proceeding, either at trial or on appeal. In these cases involving mere "attorney error," the defendant is required to demonstrate the errors " 'actually had an adverse effect on the defense.' " 528 U.S. at 482 (quoting *Strickland*, 466 U.S. at 693). Thus, if Cellier's claim is one where reliability is presumed, he then must show, but for counsel's failure to object, he would have prevailed on appeal. See, *e.g., Jackson v. Shanks*, 143 F.3d 1312, 1320 (10th Cir. 1998).

The United States Supreme Court has noted, however, two types of cases when the strong presumption of reliability gives way and prejudice is presumed because "the adversary process itself [is] presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). First, prejudice is presumed when there has been a complete denial of counsel. See *Penson v. Ohio*, 488 U.S. 75, 88-89, 102 L. Ed. 2d 300, 109 S. Ct. 346 (1988). Second, prejudice is presumed when there are "various kinds of state interference with counsel's assistance." *Strickland*, 466 U.S. at 692. In these two types of cases, prejudice is presumed because a "case-by-case inquiry into prejudice is not worth the cost." 466 U.S. at 692 (citing *Cronic*, 466 U.S. at 658). Further, these impairments of the right to effective assistance of counsel are easily identified and easy for the government to prevent because the prosecution is directly responsible. *Strickland*, 466 U.S. at 692.

The United States Supreme Court has further noted two types of cases where a "similar, though more limited, presumption of prejudice" is warranted. *Strickland*, 466 U.S. at 692. The first of these two situations occurs when "counsel is burdened by an actual conflict of interest." 466 U.S. at 692. In this situation, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 64 L. Ed. 2d 333, 100 S. Ct. 1708 [1980]).

*Flores-Ortega* illustrates the second situation where a more limited presumption of prejudice is warranted. There, the habeas cor-

pus petitioner alleged counsel was ineffective for failing to file a notice of appeal. In discussing prejudice, the Court stated counsel's deficient performance deprived the defendant "of more than a fair judicial proceeding; that deficiency deprived [the defendant] of the appellate proceeding altogether." 528 U.S. at 483. The Court stated this case was unusual because "counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself," the appeal process. 528 U.S. at 483. In these circumstances, the *Flores-Ortega* Court held there cannot be "any 'presumption of reliability' . . . to judicial proceedings that never took place." 528 U.S. at 483 (quoting *Smith v. Robbins*, 528 U.S. 259, 286, 145 L. Ed. 2d 756, 120 S. Ct. 746 [2000]).

While holding in these circumstances a defendant need not make a further showing of prejudice with respect to the reasonable probability of success on appeal on the underlying merits of his claim, a defendant must still show "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. This is because "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed," he has not been deprived of anything and is not entitled to relief.   528 U.S. at 484 (citing *Peguero v. United States*, 526 U.S. 23, 143 L. Ed. 2d 18, 119 S. Ct. 961 [1999]). Otherwise stated, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Flores-Ortega*, 528 U.S. at 484.

Cellier contends he need only show he would have appealed the denial of his motion to suppress because like the *Flores-Ortega* situation, his trial counsel's deficient performance effectively denied him an appellate proceeding on the merits of his appeal. If Cellier's analogy to *Flores-Ortega* is correct, then he has succeeded on his claim of ineffective assistance of counsel because he did

attempt to appeal the merits of the denial of his motion to suppress. See *Cellier*, 263 Kan. at 62-66.

The Seventh Circuit was presented with a similar question in *Kitchen v. United States*, 227 F.3d 1014 (7th Cir. 2000). In *Kitchen*, the defendant filed a post-trial, pre-appeal motion for new trial based on newly discovered evidence. The motion was denied. On direct appeal, the conviction was affirmed in part and reversed in part. *United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995). On remand, the defendant filed a motion to vacate his sentence, alleging counsel was ineffective in failing to appeal the denial of his motion for a new trial.

After holding counsel was deficient, the Seventh Circuit declined to extend *Flores-Ortega*. The Seventh Circuit noted prejudice is presumed when there is a complete denial of counsel, meaning "the defendant never receive[d] the benefit of a lawyer's services in constructing potential appellate arguments." *Kitchen*, 227 F.3d at 1021 (quoting *Castellanos v. United States*, 26 F.3d 717, 718 [7th Cir. 1994]). The critical factor identified by the Seventh Circuit is the difficulty "for a court to evaluate the likelihood of success on appeal when the potential issues on that appeal were never identified." *Kitchen*, 227 F.3d at 1021. Because counsel's deficient performance did not force the court "to employ [its] imagination[] to determine what appealable issues were present," this did not present "a situation as one in which [defendant] was 'abandoned' by his attorney or the denial of counsel on appeal was 'complete.' " 227 F.3d at 1021. Rather, counsel's deficient performance

"foreclosed our review of one issue—whether Kitchen was entitled to a new trial on the basis of newly discovered evidence. This is unlike the situation in which the possible issues on appeal have not even been identified by an advocate, and prejudice must be presumed. [Citation omitted.] Here, the abandoned issue has been clearly defined, and no reason has been offered why any prejudice resulting from its abandonment may not be reliably determined."

*Kitchen*, 227 F.3d at 1021. The Seventh Circuit then analyzed the claim to determine whether an appeal based on the denial of that motion could have resulted in reversal.

Here, the crucial question is whether Cellier's claim warrants the "limited" presumption of prejudice as described in *Flores-Ortega* or the generally applicable presumption of reliability. The answer to this question, in turn, hinges on whether a presumption of reliability may be accorded to appellate proceedings that took place on some, but not all, of the issues Cellier wished to advance. See *Flores-Ortega*, 528 U.S. at 483-84 (requiring a showing of "actual" prejudice when the proceeding in question is presumptively reliable, but presuming prejudice when violation of the right to counsel rendered the proceeding "entirely nonexistent"). For the reasons that follow, we find the Seventh Circuit's reasoning persuasive.

Appealing an issue not preserved and failing to file a notice of appeal results in similar outcomes. In both situations, one issue or all issues are procedurally barred from a decision on the merits. However, it is not the similarity in outcomes that must be examined. The *Flores-Ortega* Court was not concerned with the outcome, but rather, it was concerned with the unfairness of requiring "an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record . . . in search of potentially meritorious grounds for appeal." *Flores-Ortega*, 528 U.S. at 486. As the Seventh Circuit recognized, this is not a situation where the defendant was " 'abandoned' by his attorney or the denial of counsel on appeal was 'complete.' " *Kitchen*, 227 F.3d at 1021. As noted in *Strickland*, prejudice is only to be presumed where "[p]rejudice . . . is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692. Here, Cellier has offered no reason why prejudice is likely to occur or why we may not reliably determine if he has incurred any prejudice. We thus turn to the question of whether, but for counsel's unprofessional error, there is a reasonable probability the conviction would have been reversed on appeal.

On appeal of the denial of his K.S.A. 60-1507 motion, Cellier only argues the Supreme Court would have overturned the trial court's ruling that he voluntarily, knowingly, and intelligently waived his *Miranda* rights. Thus, only Cellier's second, third, and

fourth statements as described in the Supreme Court's opinion need be considered, as the first statement was not preceded by a *Miranda* warning. See *Cellier*, 263 Kan. at 62-63.

Both the Fifth and Fourteenth Amendments to the United States Constitution require that a confession be voluntary before it can be admitted into evidence. *Dickerson v. United States*, 530 U.S. 428, 147 L. Ed. 2d 405, 120 S. Ct. 2326 (2000). After the warnings as described in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), have been given, an individual may knowingly and intelligently waive his constitutional rights and agree to answer questions or make a statement. *State v. Lewis*, 258 Kan. 24, 31, 899 P.2d 1027 (1995). The burden is on the State to prove a knowing and voluntary waiver of *Miranda* rights. *State v. Hedges*, 269 Kan. 895, 8 P.3d 1259 (2000).

Essential to this inquiry is the determination the statement was the product of the free and independent will of the accused. *State v. Esquivel-Hernandez*, 266 Kan. 821, 825, 975 P.2d 254 (1999). In this vein, coercive police or State activity is an essential and necessary predicate to finding a confession is not "voluntary" within the meaning of the Fourteenth Amendment. *State v. Snodgrass*, 252 Kan. 253, 259, 843 P.2d 720 (1992) (citing *Colorado v. Connelly*, 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515 [1986]). As the United States Supreme Court explained, "[o]nly if we were to establish a brand new constitutional right—the right of a criminal defendant to confess to his crime only when totally rational and properly motivated—could respondent's present claim be sustained." 479 U.S. at 166. The Kansas Supreme Court has recognized only one exception to this rule—a statement may be involuntary and, thus, inadmissible if the defendant is found to be insane under the *M'Naughten* test, even absent State coercion. *Snodgrass*, 252 Kan. at 261 (citing *State v. Boan*, 235 Kan. 800, 804, 686 P.2d 160 [1984]).

If this were on direct review, the Kansas Supreme Court would have accepted the trial court's determination that Cellier's statements were freely and voluntarily given if that determination was supported by substantial competent evidence. See *Esquivel-Hernandez*, 266 Kan. at 826. The Supreme Court would not have rew-

eighed the evidence. See *Hedges*, 269 Kan. at 908-09. Finally, we note the "harmless error" doctrine has no application to this question. Use of an involuntary statement against a criminal defendant is a denial of due process of law, even though there is ample evidence aside from the confession to support the conviction. *Esquivel-Hernandez*, 266 Kan. at 825.

The 1507 court, after listening to the tapes of the interviews and applying the Supreme Court's scope of review noted above, found there was no reasonable probability the trial court's suppression of the defendant's confession would have been overturned, because the tapes "are compelling evidence that Cellier had the mental capacity to appreciate and understand the *Miranda* warnings and, therefore, the statements were knowingly and voluntarily made in compliance with the *Miranda* requirements." There was no finding of police or State coercion.

The tapes relied on by the 1507 court in finding a knowing and voluntary waiver were not included in the record on appeal. Cellier has the burden of furnishing a record affirmatively showing the prejudicial error of the 1507 court. See *Esquivel-Hernandez*, 266 Kan. at 827. Absent the tape or even a transcript of the confession on appeal, we presume the 1507 court's factual finding was correct that Cellier had the mental capacity to appreciate and understand the *Miranda* warnings. Absent the tapes, we are in no position to determine whether there were coercive police practices in obtaining the confession and, thus, affirm the 1507 court's holding.

*Was counsel ineffective in failing to call certain witnesses at the motion to suppress?*

Cellier next contends trial counsel was ineffective by failing to call any witnesses at the suppression hearing to testify about his mental state when he waived his *Miranda* rights. At the 1507 hearing, Dr. Wurster, a psychiatrist, opined on the day of the murder that Cellier was incapable of "making rational statements, rational decisions, rational judgments." Dr. Wurster concluded that because of Cellier's irrational, psychotic, and delusional behavior, Cellier was unable to knowingly and intelligently waive his *Miranda* rights. Dr. Wurster also testified he had reported this conclusion

to defense counsel prior to the hearing on the motion to suppress but was not called to testify. Cellier's defense counsel testified at the 1507 hearing he could not recall why he did not call Dr. Wurster to testify at the suppression hearing.

The 1507 court found defense counsel was not constitutionally ineffective and Cellier did not suffer any prejudice. Without addressing the performance prong, we find for the reasons discussed below, Cellier suffered no prejudice. To prove prejudice, Cellier must show, but for counsel's unprofessional conduct, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the context of the challenge brought here, Cellier must show not only that the evidence would have been suppressed, but also that the result of the trial would have been different. See *Kimmelman v. Morrison*, 477 U.S. 365, 379-80, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986).

The witnesses Cellier now complains counsel failed to call at the suppression hearing would only have testified as to Cellier's ability to knowingly and intelligently waive his *Miranda* rights. We have held that Cellier has failed to prove any police coercion in obtaining the statements now challenged. Therefore, we must determine whether there was a reasonable probability that the testimony of these witnesses would have established Cellier was legally insane pursuant to the *M'Naughten* test. See *Snodgrass*, 252 Kan. at 261 (holding one must prove police coercion before a statement is involuntary, unless one is legally insane).

At the 1507 hearing, Cellier presented no new testimony on the issue of legal insanity (other than that cumulative evidence noted below in Issue 4). For the reasons stated in the Supreme Court's decision holding there was sufficient evidence of Cellier's legal sanity, we find there is no reasonable probability that had Cellier presented expert testimony on the issue of insanity at the motion to suppress, the motion would have been granted. See *Cellier*, 263 Kan. at 72-73. Given these facts, we find no reasonable probability the trial court would have granted the suppression motion even if the defense had presented testimony on the issue of Cellier's legal sanity.

Further, even if the three statements had been suppressed as a result of these witnesses' testimony, there is no reasonable probability the outcome of the criminal trial would have been different because there was overwhelming evidence outside those three statements that Cellier committed the crimes charged. As noted above, Cellier only challenges his ability to waive his *Miranda* rights. Therefore, only the second, third, and fourth statements Cellier made to police, *i.e.*, those statements made after Cellier was read his *Miranda* rights, are at issue.

As noted in the Kansas Supreme Court's opinion on Cellier's direct appeal, Cellier, covered with blood, voluntarily entered the Lyon County Sheriff's office and told Officer Eric Brunner he had shot the victim, Scott Payton, in self-defense. *Cellier*, 263 Kan. at 57. Cellier then voluntarily directed the Lyon County Sheriff to the scene of the crime, and, upon arrival and confirmation that the victim was dead, stated: "I shot him, I shot him." *Cellier*, 263 Kan. at 58. It was only at this time that Cellier was first advised of his *Miranda* rights, and Cellier made the statements whose admission he now challenges. See *Cellier*, 263 Kan. at 58.

The only significant pieces of information that came of the three *Mirandized* interviews that would not have been before the jury had those statements been suppressed is Cellier's recantation of his claim of self-defense and his statements to police that he knew shooting the victim was wrong. 263 Kan. at 58-62. There was, however, overwhelming evidence outside these three statements that the act was not one of self-defense and that he was not legally insane at the time of the shooting.

First, the testimony of Nishantha Pitigala and Donald Miles as described in the Supreme Court's decision of Cellier's direct appeal is overwhelming evidence outside the three challenged statements that this was not an act of self-defense.

We also find there is no reasonable probability the admission of the three statements had any impact on the jury's finding of legal sanity. In this regard, the only statement that would not have been before the jury was Cellier's statement he knew what he did was wrong. On direct appeal, Cellier contended the evidence was insufficient for the jury to find beyond a reasonable doubt that he

was sane at the time of the murder or that he was guilty of pre-meditated murder and aggravated kidnapping. In rejecting this argument, the Kansas Supreme Court did not discuss his statements during the third interview that he knew what he had done was wrong. In fact, the Kansas Supreme Court relied little on any evidence coming from those three interviews that otherwise would not have been before the jury via the subsequent psychiatric evaluations in finding "Cellier knew the nature and quality of his act and knew right from wrong with respect to that act." 263 Kan. at 72. We also note the State's expert, who opined Cellier was legally sane at the time of the shooting, relied primarily on his own examination of Cellier. The expert never stated he relied on Cellier's statement obtained during those interviews that he knew what he was doing was wrong when he did it. We find, beyond a reasonable doubt, that the statements in question did not have any impact on the expert's opinion or on the jury's verdict.

We, therefore, believe there is no reasonable probability the outcome of the trial would have been any different had counsel called the witnesses and the trial court suppressed the statements. Cellier, therefore, suffered no prejudice from counsel's failure to call these witnesses at the suppression hearing. This claim of ineffective assistance of counsel must fail.

*Was counsel ineffective in failing to pursue a diminished mental capacity defense?*

Cellier next contends counsel was ineffective in failing to pursue the defense of diminished mental capacity. The 1507 court ruled: "Although it certainly would have been better practice for trial counsel to request the diminished capacity instruction," Cellier did not suffer prejudice and, therefore, the court denied this ground of Cellier's 1507 motion.

The concept of diminished capacity requires the presence of a mental disease or defect not amounting to legal insanity that the jury may consider in determining whether the defendant had the required specific intent for the crime charged. *State v. Wilburn,* 249 Kan. 678, 686, 822 P.2d 609 (1991); see PIK Crim. 3d 54.12-B. Cellier's defense counsel testified at the 1507 hearing that while

Cellier knew and understood the diminished capacity defense and believed it applied, he could not remember why it was not pursued. The State's brief apparently concedes the 1507 court's finding that it would have been better practice to request the diminished capacity instruction. We, therefore, will presume counsel was deficient in failing to pursue this defense.

Cellier must still show, but for counsel's failure to pursue the defense of diminished mental capacity and a jury instruction on the defense, there is a reasonable probability the result of the trial would have been different. Cellier presented no evidence either at the criminal trial or the 1507 hearing that he did not have the ability to form the specific intent required by the aggravated kidnapping statute, that specific intent being "to inflict bodily injury or to terrorize the victim." K.S.A. 21-3420, K.S.A. 21-3421. It clearly appears from the facts of this case that in fact it was the intent of Cellier "to inflict bodily injury or to terrorize the victim" in taking and confining the victim by force, threat, or deception. Since he did *in fact* form that specific intent, it necessarily follows he had the *ability* to form specific intent. There is no likelihood the jury would have found he was able to form one specific intent (to inflict bodily injury) while at the same time unable to form a different specific intent (to kill). It may well be that Cellier did not in fact specifically intend to kill the victim with the first shot, but there is strong evidence he did form that specific intent on the second and third shots. Nonetheless, the question is not whether he did *in fact* form the specific intent, but rather, whether he had the *ability* to form the specific intent. The finding he did form one specific intent is almost irrefutable evidence he had the ability to form another specific intent. Cellier suffered no prejudice.

*Was counsel ineffective in failing to call certain witnesses at trial?*

Cellier next claims trial counsel was ineffective in failing to present several witnesses who could have testified as to Cellier's mental state at the time of the shooting. Cellier identifies 11 such witnesses. They include mental health professionals, family, friends, and acquaintances. The 1507 court held counsel's conduct was not deficient because these witnesses could only have provided evi-

dence that was cumulative in nature to evidence already before the jury. It is thus necessary to examine what evidence was put on at trial with respect to Cellier's mental illness and then compare it to the testimony Cellier now faults counsel for failing to present.

At trial, Cellier's history of mental illness was chronicled by the professional opinions of Doctors Wurster, Polom, and Lacoursiere. This testimony was supplemented by the lay testimony of two of Cellier's friends, Nishantha Pitigala and Donna Miles, the two officers who initially interviewed Cellier and called the county attorney for advice due to concerns of delusional problems, attorney Ty Wheeler, who represented Cellier during the care and treatment case, Chris Criner, who was an intern at the Mental Health Center of East Central Kansas and was assigned to work with Cellier during the care and treatment case, and the care and treatment case file. The Supreme Court's decision noted that "[t]he sole focus of the trial was Cellier's mental state." *Cellier*, 263 Kan. at 62.

Comparatively, at the 1507 hearing, Cellier presented the professional testimony of Dr. Bao Duong, who diagnosed Cellier as a paranoid schizophrenic 3 months before the shooting. Through the testimony of his criminal trial counsel, Cellier also established that three other mental health professionals had diagnosed him as paranoid schizophrenic, two of them making this diagnosis after the shooting. Cellier also presented the testimony of seven lay witnesses, mostly family members, who testified about Cellier's bizarre behavior throughout his childhood and in the months before and after the shooting. Defense counsel did not interview Dr. Duong and four of the lay witnesses prior to trial.

Cellier contends the failure to investigate, interview, and call witnesses whose testimony could be favorable to the defense position is "patently ineffective advocacy" such that the prejudice prong of the *Strickland* analysis need not be demonstrated. To support this proposition, Cellier cites *King v. State*, 810 P.2d 119 (Wyo. 1991). In *King*, the Wyoming Supreme Court held prejudice is presumed when counsel unjustifiably fails to interview and secure witnesses for trial who could have rebutted testimony of the prosecution's witnesses. 810 P.2d at 122-23. This court recently required a defendant to prove prejudice when counsel unreason-

ably failed to contact and interview alibi witnesses. See *State v. Sanford*, 24 Kan. App. 2d 518, 523-26, 948 P.2d 1135, *rev. denied* 262 Kan. 968 (1997). Cellier's allegations of ineffectiveness do not rise to a complete denial of counsel, where prejudice is to be presumed. See *Penson v. Ohio*, 488 U.S. 75, 102 L. Ed. 2d 300, 109 S. Ct. 346 (1988). Thus, in order to prove prejudice, Cellier must demonstrate, but for counsel's failure to investigate and call these witnesses, there is a reasonable probability the outcome of the trial would have been different.

We agree with the 1507 court that Cellier failed to demonstrate this prejudice. Cellier's delusional behavior and beliefs were well presented to the jury, both by the defense and State's cases. The testimony of the lay witnesses at the 1507 hearing was not significantly different or more expansive than that offered at the criminal trial. The record also reveals the State presented evidence of Cellier's paranoid schizophrenia; thus, the expert testimony offered at the 1507 hearing would also have been cumulative in nature. We can, therefore, say there is no reasonable probability the outcome could have been different had this testimony been presented to the jury. This claim fails.

### Was counsel ineffective in failing to pursue a motion to recuse the trial judge?

Cellier's last claim of ineffective assistance of counsel is based on counsel's failure to file a motion with the administrative/chief judge pursuant to K.S.A. 20-311d(b) when the criminal trial judge denied Cellier's motion to recuse. The criminal trial judge in this case presided over Cellier's mental health commitment and ordered Cellier released from the state hospital 2 months prior to the shooting. Cellier offers three reasons why the recusal should have been pursued. First, the judge might have had an interest in guarding from criticism his decision to release Cellier 2 months prior to the shooting; second, the effect on the jury of the judge's previous ruling that Cellier was sane enough to be released; and third, the judge was part of the system that had failed Cellier, which was the theme of the defense. Thus, the jury may have felt a finding

of insanity would be like "indicting the very judge sitting on the case."

We agree with the 1507 court's finding that the abandonment of the motion to recuse was a reasonable strategic decision and, thus, his claim must fail. See *Flores-Ortega*, 528 U.S. at 479 ("we have held that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.").

Trial counsel testified at the 1507 hearing that after discussing the matter with Cellier, the defense chose not to pursue the motion to recuse the trial judge in order to pursue a strategy that the judge was on their side. That strategy was to argue to the jury that the judge only approved of Cellier's release from Topeka State Hospital upon the condition Cellier took his medication. Cellier did not take his medication and, thus, this judge must believe Cellier was insane when the shooting occurred.

This strategy was consistent with the defense of legal insanity. We conclude this strategy falls within the wide range of reasonable conduct. Counsel was not ineffective.

Finally, we are compelled to comment on the State's scant brief. After receiving three extensions of time within which to file its brief, the former county attorney filed his brief 2 days late; the argument section of the brief contains a mere eight paragraphs. Further, the argument section consists mainly of case citations describing our standards of review.

This apparent lack of interest in the proceedings was also recognized by the 1507 trial judge, who stated review of the case was "made even more difficult by the failure of the State to present evidence and arguments to support it's [*sic*] claim that Cellier had the effective assistance of counsel."

On this appeal, the State's brief was of very little, if any, assistance to the court. See *Seaton v. State*, 27 Kan. App. 2d 104, 105, 998 P.2d 131 (2000); *State v. Law*, 203 Kan. 89, 92-93, 452 P.2d 862 (1969).

Affirmed.