NOT DESIGNATED FOR PUBLICATION

No. 113,358

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SERGIO CERVANTES-PUENTES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed February 5, 2016. Affirmed.

*Elizabeth Seale Cateforis*, of Paul E. Wilson Project for Innocence University of Kansas School of Law, of Lawrence, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and POWELL, JJ.

*Per Curiam*: After a jury convicted Sergio Cervantes-Puentes of aggravated indecent liberties with a child, the district court sentenced him to a mandatory minimum of a hard 25 life sentence. Cervantes-Puentes' direct appeal was unsuccessful. See *State v. Cervantes-Puentes*, 297 Kan. 560, 303 P.3d 258 (2013). Cervantes-Puentes then sought relief under K.S.A. 60-1507, alleging his counsel was ineffective for failing to assure that the district court made factual findings regarding his case-specific claim under § 9 of the Kansas Constitution Bill of Rights that his sentence was unconstitutionally

1

disproportionate to his acts. Cervantes-Puentes now appeals from the district court's summary dismissal of his K.S.A. 60-1507 motion. We affirm.

*Procedural Background*

The facts establishing the underlying criminal conduct are not disputed and are set forth in his direct appeal, *Cervantes-Puentes*, 297 Kan. at 561-62. We find it unnecessary to repeat them here except as set forth in the discussion below.

After stating the facts of the case on direct appeal, the Kansas Supreme Court made a finding relevant to this proceeding. In addressing Cervantes-Puentes' disproportionality challenge to his sentence under § 9 of the Kansas Constitution Bill of Rights, the court found the district court had failed to make any factual findings regarding this claim and trial counsel had failed to request such findings. 297 Kan. at 564. During oral argument on direct appeal, counsel for Cervantes-Puentes conceded that issue had not been properly preserved, and our Supreme Court concluded: "[T]rial counsel's failure to request adequate factual findings from the district court prevents us from considering Cervantes-Puentes' case-specific § 9 claim." 297 Kan. at 565.

Following that decision, Cervantes-Puentes filed the motion for relief under K.S.A. 60-1507, arguing his trial counsel was ineffective for having failed to request that the district court make explicit findings of fact during his sentencing hearing regarding his case-specific challenge to a hard 25 life sentence. Attached to his K.S.A. 60-1507 motion was an affidavit signed by his trial counsel stating he was aware that the district court needed to make specific findings regarding the *Freeman* factors. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009) ("[A] defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165 [2015 Kan. Ct.

2

R. Annot. 257], if necessary."); *State v. Freeman*, 223 Kan. 362, Syl. ¶ 2, 572 P.2d 950 (1978) (Freeman factors to be considered). Counsel also stated: "I believed that the record at Cervantes-Puentes' sentencing hearing was adequate to preserve the issue for appeal to the Kansas Supreme Court."

After reviewing the K.S.A. 60-1507 motion and the State's response, the district court summarily denied the motion, stating:

> "[Cervantes-Puentes'] argument related to the constitutionality of his sentence has been addressed previously in [posttrial] motions and by the Supreme Court. In both cases his argument was dismissed and prayer for relief denied.

> "In this [motion] he again makes the same argument but challenges the effectiveness of counsel in failing to assure a sufficient findings of facts made to support his claim on appeal.

> "In support he provides an affidavit by counsel that appears contradictory on the matter and in fact states that there was a sufficient basis established to [preserve] the matter for appeal.

> "Even if the court were to give sufficient weight to the affidavit the [movant] fails to establish that his claim that his sentence is unconstitutional. In support thereof the court adopts the arguments and authorities presented by the State's response and particularly paragraphs 12 through 20."

Cervantes-Puentes timely appeals.

*Did the district court err by summarily dismissing the K.S.A 60-1507 motion?*

The sole issue on appeal is whether the district court erred by denying Cervantes-Puentes' K.S.A. 60-1507 motion. Cervantes-Puentes contends he received ineffective

assistance of counsel and that trial counsel's affidavit established his deficient performance. That affidavit shows that counsel's failure was not a strategic decision; trial counsel was aware he was required to ensure adequate findings of fact were made and thought he had adequately done so. Cervantes-Puentes claims the district court misread trial counsel's affidavit and contends he was prejudiced by his trial counsel's deficient performance.

*Standard of Review*

A district court has three options when considering K.S.A. 60-1507 motions:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing. [Citation omitted.]'" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

"Under K.S.A. 60-1507, a district court must conduct an evidentiary hearing unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief." *Bellamy v. State*, 285 Kan. 346, Syl. ¶ 6, 172 P.3d 10 (2007); see *Overton v. State*, No. 99,007, 2009 WL 743175, at 2 (Kan. App. 2009) (unpublished opinion) *rev. denied* 289 Kan. 279 (2009). Where, as here, the district court summarily denies a K.S.A. 60-1507 motion, we exercise de novo review. *Wahl v. State*, 301 Kan. 610, 614, 344 P.3d 385 (2015). Accordingly, we ask whether the documents of record conclusively show Cervantes-Puentes is entitled to no relief. See *Sola-Morales*, 300 Kan. at 881. The burden is on the movant to allege facts sufficient to warrant a hearing on the motion. See

Supreme Court Rule 183(g) (2007 Kan. Ct. R. Annot. 244); *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

*Abandonment*

We first address the State's argument that Cervantes-Puentes abandoned the merits of his case-specific challenge to the constitutionality of his sentence. Cervantes-Puentes claims in his brief that he "is not challenging the constitutionality of his sentence but [is] asserting that his trial counsel was ineffective for failing to ensure that adequate factual findings were made by the district court to preserve the sentencing issue for appeal." His issue, preserved on appeal, is therefore whether the district court erred by summarily denying his K.S.A. 60-1507 motion which asserted trial counsel's ineffective assistance in failing to request adequate findings of fact at his sentencing hearing. But as our discussion below evidences, the ineffective assistance of counsel argument effectively incorporates Cervantes-Puentes' underlying case-specific challenge to the constitutionality of his sentence. Given the nature of the issues presented here, as well as their importance, coupled with the manner of the briefing on appeal, we do not find a broad abandonment of the underlying issue.

*The Journal Entry*

In determining whether the motion, files, and records of the case conclusively show that the movant is not entitled to relief, we first examine the journal entry. The district court's journal entry does not clarify whether the district court reviewed anything other than the K.S.A. 60-1507 motion and its attached affidavit and the State's response before entering its denial. The journal entry contains no specific findings regarding trial counsel's alleged inadequate performance or regarding any alleged prejudice to the defendant. It neither recites nor seeks to apply the standard two-part test for finding ineffective assistance of counsel, nor cites to any authority establishing that test.

5

Nonetheless, the journal entry concludes: "Even if the court were to give sufficient weight to the affidavit the [movant] fails to establish his claim that his sentence is unconstitutional. In support thereof the court adopts the arguments and authorities presented by the State's response and particularly paragraphs 12 through 20." We thus examine that response.

*The State's response*

The State's response recited the standard two-part test for finding ineffective assistance of counsel and cited to authorities establishing that test. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). The State argued that even if the district court found Cervantes-Puentes' counsel had been deficient in his performance, the court should nonetheless deny the motion because Cervantes-Puentes could not show prejudice. To establish prejudice in this context, a movant must establish that "but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been more favorable to the defendant." *Moncla v. State*, 285 Kan. 826, Syl. ¶ 3, 176 P.3d 954 (2008).

*The prejudice requirement*

As applied to a suppression motion, the prejudice test means a movant must show not only that the evidence would have been suppressed, but also that the result of the trial would have been different. *Cellier v. State*, 28 Kan. App. 2d 508, 517, 18 P.3d 259, *rev. denied* 271 Kan. 1035 (2001), *disapproved on other grounds by State v. Swanigan*, 279 Kan. 18, 106 P.3d 39 (2005); see *Kimmelman v. Morrison*, 477 U.S. 365, 379-80, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). In the context of the challenge brought here,

6

Cervantes-Puentes must show not only that absent his counsel's deficient performance the merits of his claim would have been preserved on direct appeal but also that, but for counsel's error, the result of his direct appeal would have been different. That means Cervantes-Puentes must show a reasonable probability that his case-specific challenge to the disproportionality of his sentence would have succeeded. See *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014). It is not sufficient, as Cervantes-Puentes claims, merely to show a reasonable probability that his case-specific challenge would have been preserved and thus reviewed on its merits by the Supreme Court, absent counsel's deficient performance.

*Case-specific challenges to disproportionality*

In *Freeman*, 223 Kan. at 367, the Kansas Supreme Court said: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."

*Freeman* established the following three-part test:

"In determining whether the length of a sentence offends the constitutional prohibition against cruel punishment three techniques should be considered:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes

7

punished less severely than the offense in question the challenged penalty is to that extent suspect; and;

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

The techniques applied in *Freeman* continue to guide our constitutional inquiry. *State v. McDaniel & Owens*, 228 Kan. 172, 185, 612 P.2d 1231 (1980); see *State v. Gomez*, 290 Kan. 858, 864, 235 P.3d 1203 (2010) (considering the offender's mental state and motive in committing the crime, the offender's propensity for violence, the actual harm caused to his victim or to society by his conduct, and any prior criminal history); accord *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); 560 U.S. at 88 (Roberts, C.J. concurring).

Because these factors are case specific and inherently factual, they are to be made in the first instance by the district courts. *Gomez*, 290 Kan. at 864. Because Cervantes-Puentes' counsel failed to ensure the findings and conclusions made by the district judge at the time of sentencing were sufficient to support appellate argument and he filed no motion invoking the judge's duty under Rule 165 (2015 Kan. Ct. R. Annot. 257), see *Seward*, 289 Kan. at 720-21, we have no record at sentencing of those factors.

Instead, we have a record from the K.S.A. 60-1507 hearing of those factors because the district court's order specifically adopted paragraphs 12-20 of the State's response, which recited and applied *Freeman*'s three-part test. Specifically, the State addressed each *Freeman* factor as applied to the facts of this case, argued that each factor cut against Cervantes-Puentes' claims, and concluded that Cervantes-Puentes had failed to establish the prejudice prong of his ineffective assistance of counsel claim. The district court agreed. We thus review the facts of record, as tied to their relevant *Freeman* factors,

8

mindful that "[a]ppellate courts do not make factual findings but review those made by district courts." *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009).

### *First* Freeman *factor*

The first factor we employ to determine is whether a sentence is "cruel or unusual" under § 9 of the Kansas Constitution Bill of Rights because of its length is:

> "The nature of the offense and the character of the offender . . . with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment." *Freeman*, 223 Kan. at 367.

### *The facts of the crime*

The facts of the crime were set out in paragraph 13 of the State's response, adopted by the district court. The facts established that Cervantes-Puentes approached a 13-year-old female in a store in Wichita, who was unaccompanied at the time. He pretended he was trying to find a shirt that would fit his daughter, held a shirt up to the victim, then moved behind her and rubbed his erect, clothed penis against her clothed buttocks. She immediately walked away and reported the incident to her mother who, in turn, reported the incident to store security, who apprehended Cervantes-Puentes before he left the store.

### *The offender's mental state and motive*

Paragraphs 13 and 19 of the State's response also addressed the offender's mental state and motive. At trial, Cervantes-Puentes admitted that he had a 12-year-old daughter,

9

that he approached the 13-year-old victim in the store and asked her about a shirt, and that he may have touched her as he was holding the shirt up. His theory of defense was that he had no motive or intent to touch her in a sexual way. The jury found otherwise, based on evidence that is not alleged to be insufficient, meaning that his lewd fondling or touching of the victim was done with the intent to arouse or to satisfy his own sexual desires.

*The violent or nonviolent nature of the offense*

Cervantes-Puentes argues now, as his trial counsel did at sentencing, that he never exposed himself, was not violent or forceful with the victim, had only momentary contact with her, never caused her physical pain, and never restrained her when she attempted to leave.

The State contends, as it did in paragraphs 13-16 and 19 of its response, that Cervantes-Puentes' acts were sufficiently violent to warrant a life sentence. In support, it cites *State v. Seward*, 296 Kan. 979, 986, 297 P.3d 272 (2013), for the proposition that the crimes of aggravated criminal sodomy and rape are violent offenses. But Cervantes-Puentes was not convicted of aggravated criminal sodomy or rape, and the State makes no other argument that his crime of conviction, aggravated indecent liberties with a child, is inherently violent. Nonetheless, we find that aggravated indecent liberties with a child is listed as a "sexually violent crime." See K.S.A. 2015 Supp. 22-3717(d)(5)(C).

Additionally, *Seward* counsels that "[s]imply because [the defendant] could have committed these acts more violently does not mean they are not violent in their most basic form, particularly when committed against an especially vulnerable victim." 296 Kan. at 986. We find that statement appropriate here, particularly in light of the recent case of *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014). Reed was a registered sex

offender who had been convicted by a jury of two counts of aggravated indecent liberties with a child under the age of 14. The offenses occurred approximately 2 years apart and involved two 8-year-old girls. When addressing an argument regarding a jury instruction of lewd fondling or touching, our Supreme Court stated:

> "These arguments attempt to recast the elements of the offense by adding requirements not found in the statutory definition of aggravated indecent liberties with a child under the age of 14, as defined in K.S.A. 21-3504(a)(3)(A). The legislature did not restrict the prohibited conduct by identifying body parts that could or could not be fondled or touched. Nor did the legislature specify that there must be skin-to-skin contact or that the offender must use his or her hands to fondle or touch the victim for there to be a violation of the law. See *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977), *overruled on other grounds by State v. Ta*, 296 Kan. 230, Syl. ¶ 5, 290 P.3d 652 (2012). Instead, a touch is prohibited if it meets 'the common meaning of the term "lewd," that is, whether a touch[ ] is "sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious."' *Ta*, 296 Kan. at 242-43 (quoting *Wells*, 223 Kan. at 98); see Black's Law Dictionary 1047 (10th ed. 2014) (defining 'lewd' as '[o]bscene or indecent; tending to moral impurity or wantonness'). In considering if a touch is lewd, a factfinder—in this case, the jury— should consider whether the touch 'tends to undermine the morals of a child [and] is so clearly offensive as to outrage the moral senses of a reasonable person.' *Wells*, 223 Kan. at 98; see *State v. Colston*, 290 Kan. 952, 967, 235 P.3d 1234 (2010)." *Reed*, 300 Kan. at 500-01.

Similarly, in *State v. Mossman*, 294 Kan. 901, 909, 281 P.3d 153 (2012), the Kansas Supreme Court noted that sex offenses against minors are "'considered particularly heinous crimes.'" For that reason, even though Mossman's relationship with his victim was not violent, the Kansas Supreme Court rejected Mossman's argument that his sentence was disproportionate punishment to his crime committed. 294 Kan. at 909-12.

Given the similarity of the arguments in *Reed* and *Mossman* to those in this case and the statutory direction that aggravated indecent liberties with a child is per se a sexually violent crime, see K.S.A. 2015 Supp. 22-3717(d)(5)(C), we find this factor weighs against Cervantes-Puentes.

*The extent of culpability for the injury*

Cervantes-Puentes argues that no evidence was presented that the victim suffered physical injury or lasting mental or emotional trauma. The record does not include many details about the injury to the victim resulting from the criminal acts. It does include the victim's testimony that his acts surprised her and made her uncomfortable, and her mother's testimony that the victim reported the acts to her immediately, with tears in her eyes. But this factor looks to the degree of culpability for the injury, not the extent of the injury itself.

The State addressed this factor indirectly in paragraphs 12 and 13 of its response. The facts show that the victim bore no culpability for Cervantes-Puentes' acts or any injury he caused. She was never alleged to have been a willing participant in his sexual acts. Instead, she was duped into close proximity to the defendant, with whom she had had no prior contact, and left his presence as soon as she realized what he was doing to her. Cervantes-Puentes thus bears the entire culpability for the injury here.

*The penological purposes of the prescribed punishment*

The State argued in paragraph 15 that a lengthy sentence ensuring Cervantes-Puentes would be in prison for a long time would serve a penological purpose and protect society from his inability to control his actions.

12

"The legislative intent behind Jessica's Law was to remove perpetrators of sexual crimes against children from society. *State v. Spencer,* 291 Kan. 796, 823-24, 248 P.3d 256 (2011). Because of high rates of recidivism among such offenders, the State 'has a particularly compelling interest in using incarceration as a means of protecting its youth.' *Woodard*, 294 Kan. at 722." *Seward*, 296 Kan. at 986-87.

We agree. Viewing this crime in conjunction with his prior bad acts and his prior criminal history shows that Cervantes-Puentes repeatedly failed to control his sexual actions and acted them out in public, this time with a vulnerable victim.

### *Other bad acts*

The State also presented to the jury K.S.A. 60-455 evidence that Cervantes-Puentes had engaged in similar encounters with adult women in other Wichita stores between March and May 2009, the 3 months immediately prior to the offense in this case. Specifically, the State presented testimony from two witnesses, each of whom testified that Cervantes-Puentes approached them on separate occasions in a store, pretended to need assistance in sizing and purchasing a shirt for his wife, and rubbed his clothed erection against their clothed backsides. The State also introduced a video depicting Cervantes-Puentes performing the same actions with a third, unidentified female victim from the same store where the incidences involving those two women occurred. This factor was addressed in paragraph 14 of the State's response.

We do not discount the fact that Cervantes-Puentes' conduct likely harmed society as well, given that his acts were done in a public store to a 13-year-old girl and could have been witnessed by others. Further, Cervantes-Puentes had previously done similar acts to adult women in public stores, as detailed above, and had a prior criminal history of having exposed himself in public.

13

*Prior criminal history*

At sentencing, the district court was made aware of Cervantes-Puentes' criminal history. He was convicted in July 2006 of three misdemeanor counts of "public indecency-exposure" in Georgia, and was convicted in July 2009 of lewd and lascivious behavior in Wichita, Kansas—also a misdemeanor. His record included other misdemeanor convictions apparently unrelated to his sexual behavior. The State argued this factor in paragraph 16 of its response.

Our threshold consideration of the first *Freeman* factor does not lead to an inference of gross disproportionality. Accordingly, we are not certain that we need to address the remaining two *Freeman* factors. See *Seward*, 296 Kan. at 983 (indicating that one need not reach the second two factors if one finds against defendant on the first *Freeman* factor); *Gomez*, 290 Kan. 858, Syl. ¶ 5. Nonetheless, we do so in an abundance of caution. See *State v. Swint*, 302 Kan. 326, 344-46, 352 P.3d 1014 (2015) (addressing all three factors despite finding against defendant on the first *Freeman* factor).

*Second* Freeman *factor*

The second *Freeman* factor directs the court to compare the punishment for Cervantes-Puentes' offense with those imposed in Kansas for more serious offenses. See *Mossman*, 294 Kan. at 912. If that review reveals more serious crimes are punished less severely than the present offense, "the challenged penalty is to that extent suspect." *Freeman*, 223 Kan. at 367. The court considers whether the sentence imposed is grossly disproportionate in relation to the sentence for the more serious offense, considering the penological purposes of the sentence and other considerations under the first *Freeman* factor. See *Mossman*, 294 Kan. at 917.

14

Cervantes-Puentes argues, as he did before the district court, that the penalty for his crime is more severe than the penalty for second-degree murder, which he contends is a more serious offense. But as the State noted in paragraph 17 of its response, the Kansas Supreme Court has recently and repeatedly rejected this comparison to homicide crimes in aggravated indecent liberties cases. See *Swint*, 302 Kan. at 345; *State v. Spear,* 297 Kan. 780, 801-02, 304 P.3d 1246 (2013); *State v. Woodard,* 294 Kan. 717, 723-24, 280 P.3d 203 (2012) (explaining that there is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment). Because Cervantes-Puentes does not challenge the conclusions in those cases, we find this factor does not weigh in his favor.

*Third* Freeman *factor*

Under the third *Freeman* factor, the court compares the penalty under Jessica's Law for aggravated indecent liberties with a child with the penalties for the same offense in other jurisdictions. *Freeman*, 223 Kan. at 367, 574 P.2d 950; see *State v. Seward*, 296 Kan. at 988-89 (clarifying that the comparison must be between the "same" offense, not "similar" offenses).

Cervantes-Puentes presents no review of other states' statutes and makes no argument that Kansas' Jessica's Law statute is harsher. Although he addresses the merits of the first two *Freeman* factors, he does not address the third *Freeman* factor and thus abandons it. See *State v. Johnson,* 269 Kan. 594, 602, 7 P.3d 294 (2000). This was what the State argued in paragraph 18, adopted by the district court. Had the argument not been abandoned, it would nonetheless have been unsuccessful. See *Woodard*, 294 Kan. at 725 (finding Kansas sentencing scheme for aggravated indecent liberties with a child not out of line with other jurisdictions).

15

Considering all of the factors in combination, as the district court did, we conclude they compel a finding that Cervantes-Puentes' sentence is not constitutionally disproportionate to his offense. Thus his life sentence without the possibility of parole for 25 years does not violate § 9 of the Kansas Constitution Bill of Rights.

*Conclusion*

On appeal, Cervantes-Puentes argues he was prejudiced by the ineffective assistance of counsel. At times he contends that "because of the lack of factual findings by the district court, whether the [Supreme] Court would have reversed and remanded for a new sentencing hearing cannot be determined." At other times he contends that "the record supports a conclusion that . . . the Hard 25 sentence is disproportionate to the nature of the offense and the character of the offender" and that "more serious crimes would have resulted in less punishment" for him. We disagree. Having reviewed the record which was before the district court and the findings of the district court including its adoption of the State's response, we are firmly convinced that Cervantes-Puentes' claim of disproportionality would have failed even had his attorney or the sentencing court made the requisite findings and thus preserved his claim for review by the Kansas Supreme Court. Accordingly, Cervantes-Puentes is unable to show prejudice, as is required to show ineffective assistance of counsel in his K.S.A. 60-1507 motion. Because the record conclusively shows Cervantes-Puentes is entitled to no relief, the district court did not err in summarily denying his K.S.A. 60-1507 motion.

Affirmed.

16